10-6517.111-JCD                                                May 10, 2011

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

```
FLAVA WORKS, INC.,                  )
                                    )
          Plaintiff,                )
                                    )
     v.                             )    No. 10 C 6517
                                    )
MARQUES RONDALE GUNTER d/b/a        )
myVidster.com; SALSAINDY, LLC;      )
VOXEL DOT NET, INC., and            )
JOHN DOES 1-26,                     )
                                    )
          Defendants.               )
```

### MEMORANDUM OPINION

Before the court is the motion of defendants Marques Rondale Gunter and SalsaIndy, LLC to dismiss plaintiff's first amended complaint. For the following reasons, the motion is granted in part and denied in part.

### BACKGROUND

Plaintiff, Flava Works, Inc., is a company that produces and distributes adult entertainment products, including DVDs, streaming video, magazines, photographs, and internet website content. Defendant Marques Rondale Gunter created, owns, and operates a website called myVidster.com ("myVidster"). The complaint describes myVidster as a social networking website through which site members can store and "bookmark" video files and post links to third-party websites on which the files are available. Defendant

- 2 -

SalsaIndy, LLC ("SalsaIndy") is an entity "formed, owned, controlled, managed, and/or operated by . . . Gunter in some connection with myVidster." (First Am. Compl. ¶ 5.) Defendant Voxel Dot Net, Inc. ("Voxel") is a company that provides web-hosting services to myVidster.[1]

Plaintiff owns several registered copyrights and trademarks. It alleges that members and/or users of myVidster (including the John Doe defendants) have, without plaintiff's permission, uploaded plaintiff's copyrighted videos and images, or links to those videos, to myVidster. The videos and images are then available for other myVidster users to view and/or download. MyVidster encourages users to invite others to view uploaded and bookmarked videos; the website states, "While bookmarking videos can be a fun and addictive activity, it is more enjoyable in the company of like minded friends. The form below will send invites to your friends telling them about myVidster and you will be given the option to provide a link to your video collection." (First Am. Compl. ¶ 24.) MyVidster offers inexpensive storage space for videos.

In plaintiff's view, Gunter has, by offering low-cost storage space and encouraging users to share and view videos, "purposefully created a system that makes it more difficult for copyright owners

___

[1] Voxel recently provided plaintiff with a sworn declaration that it no longer hosts myVidster, and plaintiff has withdrawn its pending motion for a preliminary injunction as to Voxel. (The motion is still pending against Gunter and SalsaIndy, and a hearing is scheduled for May 18, 2011.)

to monitor the site for infringement." (First Am. Compl. ¶ 25.) Plaintiff alleges that after a number of its copyrighted movies and/or portions of its movies were posted on myVidster, it sent to Gunter and his web-hosting companies (including Voxel) "takedown notices" pursuant to § 512 of the Digital Millennium Copyright Act ("DMCA notices"). These notices of copyright infringement specified the infringing material and demanded that it be immediately removed from myVidster. The notices also identified users that plaintiff suspects to be repeat infringers. Between May 2010 and December 2010, Plaintiff sent Gunter seven DMCA notices.

Plaintiff does not allege that defendants failed to remove the material from myVidster, but does allege that after the notices were sent, the website "continued to be updated with more and more infringing material from its members." (First Am. Compl. ¶¶ 54-57.) According to plaintiff, myVidster "does not have in place any filters or identifiers to prevent" its copyrighted material from being re-posted by repeat infringers, and it "took no action toward stopping, reprimanding, or banning" repeat infringers. (First Am. Compl. ¶¶ 61-62.)

The First Amended Complaint contains seven counts: direct copyright infringement (Count I); contributory copyright infringement (Count II); vicarious copyright infringement (Count III); inducement of copyright infringement (Count IV); false designation of origin in violation of the Lanham Act (Count V);

- 4 -

trademark and trade dress infringement in violation of the Lanham Act (Count VI); and common-law trademark infringement and unfair competition (Count VII).

Gunter and SalsaIndy ("defendants") move to dismiss the complaint.

## **DISCUSSION**

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004). Under federal notice-pleading standards, a complaint need not contain "detailed factual allegations," but it must have more than mere "labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff is obligated to provide the factual grounds of his entitlement to relief, and a "formulaic recitation" of the elements of a claim will not do. Id. The complaint must contain sufficient facts to raise a plaintiff's right to relief above a "speculative" level, id. at 555, and the claim must be "plausible on its face," id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). When evaluating a motion to dismiss a complaint, we must accept as true all factual

allegations in the complaint, but not its legal conclusions. <u>Id.</u> at 1949-50.

**A. <u>Direct Copyright Infringement (Count I)</u>**

To state a claim for direct copyright infringement, plaintiff must allege (1) ownership of a valid copyright and (2) defendants' unauthorized copying of the constituent elements of the work that are original. <u>See</u> <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 361 (1991); <u>Harbor Motor Co. v. Arnell Chevrolet-Geo, Inc.</u>, 265 F.3d 638, 644 (7th Cir. 2001).

Defendants contend that plaintiff has failed to sufficiently plead the second element of direct infringement because it alleges merely that myVidster is a conduit for its users' acts of unauthorized copying. Defendants cite a handful of decisions holding that internet service providers are not liable for direct infringement where their role is limited to operating a website that others use to create and/or exchange unauthorized copies of works. Plaintiff responds: "By allowing users to store and reproduce the copyrighted materials, Defendants have engaged in unauthorized copying." (Pl.'s Resp. at 2.) Plaintiff also points to its allegations that Defendants "posted" its copyrighted materials.

Plaintiff cites no apposite authority for its broad interpretation of "copying." The decisions cited by defendants stand for the proposition that to establish liability for direct

- 6 -

copyright infringement, a plaintiff must demonstrate that the defendant engaged in volitional conduct that causes a copy to be made. See CoStar Group, Inc. v. LoopNet, Inc., 373 F.3d 544, 555 (4th Cir. 2004) ("[W]e hold that [internet service providers], when passively storing material at the direction of users in order to make that material available to other users upon their request, do not 'copy' the material in direct violation of § 106 of the Copyright Act."); Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc., 907 F. Supp. 1361, 1370 (N.D. Cal. 1995) ("Although copyright is a strict liability statute, there should still be some element of volition or causation which is lacking where a defendant's system is merely used to create a copy by a third party."); see also Parker v. Google, Inc., 242 F. App'x 833, 836-37 (3d Cir. 2007) (citing CoStar and Netcom).

The first amended complaint does not allege that defendants themselves made copies of plaintiff's works. The vague allegation that defendants "posted" the works is not equivalent to an allegation that they caused copies of the works to be made, especially considering the remaining allegations, where the only volitional copying is alleged to have been done by myVidster users, not its operators. (First Am. Compl. ¶¶ 27, 74 (Count I).) Because there is no allegation that defendants caused copies of plaintiff's copyrighted works to be made, plaintiff fails to state

- 7 -

a claim for direct copyright infringement, and Count I will be dismissed.

**B.    Contributory Copyright Infringement (Count II)**

"[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971); see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005). Thus, to state a claim for contributory infringement, a plaintiff must plead (1) a third party directly infringed a copyrighted work; (2) the defendant knew of the infringement; and (3) the defendant materially contributed to the infringement. Monotype Imaging, Inc. v. Bitstream Inc., 376 F. Supp. 2d 877, 883 (N.D. Ill. 2005).

Knowledge, for purposes of contributory copyright infringement, encompasses both actual and constructive knowledge. In re Aimster Copyright Litig., 334 F.3d 643, 650 (7th Cir. 2003) ("Willful blindness is knowledge, in copyright law (where indeed it may be enough that the defendant *should* have known of the direct infringement) . . . ."). Defendants contend that the allegation that they received DMCA notices, without more, is insufficient to impute knowledge for a contributory infringement claim. They cite the district court's opinion in the CoStar litigation, CoStar Group Inc. v. LoopNet, Inc., 164 F. Supp. 2d 688, 707 (D. Md. 2001), as

- 8 -

well as Netcom, 907 F. Supp. at 1374, which explain that the receipt of a DMCA (or similar) notice might not automatically imply knowledge. A useful discussion of the distinction can be found in Emily Zarins, Comment, Notice Versus Knowledge Under the Digital Millennium Copyright Act's Safe Harbors, 92 Calif. L. Rev. 257, 287-88 (2004) ("Knowledge for purposes of contributory infringement refers to a service provider's knowledge of actual infringement, while notification communicates to a service provider a claim of alleged infringement. . . . Contributory infringement seeks to punish a party for knowingly continuing to assist infringement; [DMCA] notification aims to provide an effective warning to give rise to a duty to investigate.")

Plaintiff cites to four decisions in support of its argument that the multiple DMCA notices it sent to defendants are sufficient for knowledge. Two of the decisions are inapposite because neither involved a contributory copyright infringement claim. See Olan Mills, Inc. v. Linn Photo Co., 23 F.3d 1345, 1348 (8th Cir. 1994); Wildlife Express Corp. v. Carol Wright Sales, Inc., 18 F.3d 502, 512 (7th Cir. 1994). In the single case involving DMCA notifications, there was additional evidence of knowledge. See A & M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1020 n.5 (9th Cir. 2001) (defendant had actual knowledge because a document authored by defendant's co-founder mentioned the "need to remain ignorant" of users' real names and IP addresses "since they are

exchanging pirated music" and because Napster had been notified of more than 12,000 infringing files, some of which were still available, and had constructive knowledge for four additional reasons). There was also additional evidence of knowledge in Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 261-64 (9th Cir. 1996). The defendant, which operated a swap meet, knew that swap-meet vendors were selling counterfeit recordings not only because it had been notified about the sale of infringing materials but also because the sheriff had raided the swap meet and seized counterfeit recordings.

We will assume for this discussion that to allege knowledge, plaintiff must allege something more than defendants' receipt of the DMCA notices. The issue is whether plaintiff has alleged facts that allow us to draw a reasonable inference that defendants actually or constructively knew of copyright infringement occurring on myVidster. We believe that it has done so. "The knowledge element for contributory copyright infringement is met in those cases where a party has been notified of specific infringing uses of its technology and fails to act to prevent future such infringing uses, or willfully blinds itself to such infringing uses." Monotype, 376 F. Supp. 2d at 886 (citing Aimster, 334 F.3d at 650, and Fonovisa, 76 F.3d at 264). Here, plaintiff has alleged that it sent not just one DMCA notice, but seven notices over a seven-month period. The DMCA notices attached to the complaint

identify specific infringing files and users as well as specific repeat infringers. Moreover, while plaintiff does not allege that defendants failed to remove the infringing material from myVidster, it does allege that defendants failed to take any action to stop, reprimand, or ban the repeat infringers listed in the DMCA notices and that defendants failed to implement filters or identifiers to prevent repeated infringing conduct. (First Am. Compl. ¶¶ 61-62.) Because plaintiff alleges not just the receipt of DMCA notices but also that after having received the notices defendants failed to act to prevent future similar infringing conduct, it has sufficiently alleged the knowledge element of contributory copyright infringement.

Defendants also argue that plaintiff has failed to adequately allege that they materially contributed to the infringing activity of myVidster's users. They contend that the "mere allegation that additional unidentified infringing material was uploaded to [myVidster] following [defendants'] receipt of the takedown notices is not an allegation that [defendants] materially contributed to the specific acts of infringement that Plaintiff addressed in the takedown notices." (Defs.' Mem. at 5.) But that is not all that plaintiff alleges. It alleges that defendants provide a website that stores infringing material, allows backup copies to be made, and encourages sharing. It also alleges that myVidster has no filters or identifiers in place to prevent repeat infringers and

- 11 -

that it took no action to stop or ban the repeat infringers who allegedly posted plaintiff's copyrighted works. These allegations are more than sufficient to allege material contribution. See, e.g., Napster, 239 F.3d at 1022 (holding that defendant materially contributed to direct infringement by providing the website and support services to enable users to locate music files); Fonovisa, 76 F.3d at 264 (holding that defendant materially contributed to direct infringement by providing the location and support services for the vendors selling counterfeit recordings).

The motion to dismiss will be denied as to Count II.

**C. Vicarious Copyright Infringement (Count III)**

"[A] defendant is variously liable for copyright infringement if it has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc., 955 F.2d 1143, 1150 (7th Cir. 1992) (internal quotation marks omitted). This theory allows the imposition of liability even if the defendant initially lacked knowledge of the infringement. Grokster, 545 U.S. at 930 n.9.

Defendants assert that plaintiff has failed to allege that defendants have the right and ability to supervise the infringing activity. Plaintiff cites Napster, 239 F.3d at 1023, and Fonovisa, 76 F.3d at 262, for the proposition that the ability to block infringers' access to the environment in which the infringing

- 12 -

activity occurs is evidence of the right and ability to supervise. In Napster, the Court observed that the defendant reserved the right to control access to its system, but failed to police its virtual "premises," thus satisfying this element of vicarious liability. 239 F.3d at 1023-24.

In its brief, plaintiff contends that defendants "have the right and ability to supervise myVidster users: MyVidster Terms of Service." (Pl.'s Resp. at 11.) But the amended complaint fails to include this allegation or even refer to the myVidster's terms of service. We are also unpersuaded by plaintiff's suggestion that, from its allegation that Gunter owns and operates myVidster, we can infer that defendants "can block an infringer's access to the website and from posting infringing materials." (Pl.'s Resp. at 11.) To sufficiently allege the element of "right and ability to supervise," plaintiff will have to allege more than the mere ownership and operation of myVidster. However, we reject defendants' contention that plaintiff must allege "pervasive participation" in the infringing activity. In Fonovisa, "pervasive participation" was found to be amply *sufficient* to satisfy the control element. 76 F.3d at 263. But it is not the *standard*, and the phrase is not part of the "right and ability to supervise" test as articulated by the Seventh Circuit.

Defendants also contend that plaintiff fails to allege that defendants had a direct financial interest in the infringing

activity. "Financial benefit exists where the availability of infringing material acts as a draw for customers." Napster, 239 F.3d at 1023 (internal quotation marks omitted). In defendants' view, plaintiff must allege that customers either subscribed to myVidster because of the available infringing material or cancelled their subscriptions because infringing materials were no longer available. Defendants cite no case law in support of this overly-demanding standard. All plaintiff need allege is that the availability of infringing material on myVidster is a draw for customers. See, e.g., Ellison v. Robertson, 357 F.3d 1072, 1078-79 (9th Cir. 2004). For example, in Fonovisa, 76 F.3d at 263, allegations that the defendant swap-meet operator gained benefits--the payment of a daily rental fee by the infringing vendors, customer admission fees, and incidental customer fees--from the infringing sales occurring at the meet were found to be sufficient to allege direct financial benefit.

Although plaintiff's pleading burden with respect to the second aspect of vicarious liability is a low hurdle, it has not managed to clear it. While the complaint does allege that that inexpensive storage space and the ability to share videos attracts customers to myVidster, it does not allege that the presence of the infringing material on the site enhances the site's attractiveness or draws customers. Therefore, it does not adequately plead that defendants had a direct financial interest in the infringement.

Count III will be dismissed, and plaintiff will be given leave to file an amended complaint that adequately alleges vicarious copyright infringement, if it can do so.

**D.      Inducement of Copyright Infringement (Count IV)**

In Grokster, 545 U.S. at 936-37, the Supreme Court adopted an "inducement rule" for copyright, holding that "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." The Court explained that "mere knowledge of infringing potential or of actual infringing uses would not be enough . . . to subject a distributor to liability," nor would ordinary acts incident to product distribution, such as offering customers technical support. Id. at 937. The rule, instead, "premises liability on purposeful, culpable expression and conduct." Id.

Plaintiff pleads merely a formulaic recitation of inducement but no facts that plausibly suggest that it is entitled to relief on this theory. It is not enough to allege that myVidster provides storage for video files and encourages sharing (or even that it also knew that the website could be used to infringe). No clear expression of an infringing purpose is alleged, and no active steps taken to foster infringement, such as advertising an infringing use

- 15 -

or instructing how to engage in an infringing use, are alleged. Accordingly, Count IV will be dismissed.

E.  **False Designation and Trademark Infringement (Counts V-VII)**

Counts V and VI are claims for false designation of origin and trademark and trade dress infringement in violation of the Lanham Act, 15 U.S.C. §§ 1125 and 1114, respectively. Count VII is a common-law trademark infringement and unfair competition claim.

Section 32 of the Lanham Act, 15 U.S.C. § 1114(1), imposes civil liability on

> [a]ny person who . . . without the consent of the registrant . . . *use[s] in commerce* any reproduction . . . [or] copy . . . of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion . . . .

15 U.S.C. § 1114(1)(a) (emphasis added). Section 43 of the Lanham Act imposes liability on

> [a]ny person who, on or in connection with any goods or services . . . *uses in commerce* any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval of . . . goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1)(A) (emphasis added). A mark is "deemed to be in use in commerce" for services when "it is used or displayed in the sale or advertising of services and the services are rendered in commerce . . . ." 15 U.S.C. § 1127. The analysis of plaintiff's common-law trademark infringement and unfair competition claim is the same as that of its Lanham Act claims.

- 16 -

See Specht v. Google Inc., --- F. Supp. 2d ----, 2010 WL 5288154, at *24 (N.D. Ill. Dec. 17, 2010).

Defendants contend that plaintiff has failed to allege that defendants used plaintiff's marks in commerce. We agree. The complaint alleges only that plaintiff's copyrighted material posted to myVidster without plaintiff's permission "often contains" its trademarks or trade dress and that defendants' unauthorized distribution of the material causes confusion about its origin. (First Am. Compl. ¶ 28.) It does not allege that defendants used plaintiff's marks at all or that they used the marks in commerce. Counts V, VI, and VII will therefore be dismissed.

## **CONCLUSION**

For the foregoing reasons, the motion of Marques Rondale Gunter and SalsaIndy, LLC to dismiss the first amended complaint [12] is granted in part and denied in part. Counts I, III, IV, V, VI, and VII are dismissed. Plaintiff is given leave to file a second amended complaint by May 16, 2011 that cures Count III's deficiencies, if it can do so. The motion is denied as to Count II.

- 17 -

DATE:   May 10, 2011

ENTER:   _____
         John F. Grady, United States District Judge