10-6517.113-JCD                                              September 1, 2011

```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION
```

```
FLAVA WORKS, INC.,                )
                                  )
          Plaintiff,              )
                                  )
     v.                           )    No. 10 C 6517
                                  )
MARQUES RONDALE GUNTER d/b/a      )
myVidster.com; SALSAINDY, LLC;    )
VOXEL DOT NET, INC., and          )
JOHN DOES 1-26,                   )
                                  )
          Defendants.             )
```

## MEMORANDUM OPINION

Flava Works, Inc. ("Flava"), is a company that produces and distributes adult entertainment products, including DVDs and streaming video. Flava brought this copyright and trademark infringement action against Marques Rondale Gunter, who created, owns, and operates a website called myVidster.com ("myVidster"); SalsaIndy, LLC ("SalsaIndy"), an entity controlled by Gunter that funded the start-up of myVidster; and Voxel Dot Net, Inc., a company that previously provided web-hosting services to myVidster.

Earlier this year, Flava moved for a preliminary injunction prohibiting Gunter and SalsaIndy from infringing on its copyrights, and we conducted a hearing on the motion in May and June. In late July, we issued a memorandum opinion granting the motion on the basis that Flava is likely to succeed on the merits of its

contributory infringement claim. <u>Flava Works, Inc. v. Gunter</u>, No. 10 C 6517, 2011 WL 3205399 (N.D. Ill. July 27, 2011).[1] Gunter and SalsaIndy have filed a motion for reconsideration of our decision. The motion will be denied for the reasons explained below.

"Rule 59(e) allows a party to direct the district court's attention to newly discovered material evidence or a manifest error of law or fact, and enables the court to correct its own errors and thus avoid unnecessary appellate procedures. The rule does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." <u>Moro v. Shell Oil Co.</u>, 91 F.3d 872, 876 (7th Cir. 1996) (citation omitted). Although defendants do not set out the basis for their motion, they contend that our holding that Flava is likely to succeed on the first prong of its contributory infringement claim (direct infringement by a third party) is "directly contrary to the Ninth Circuit's seminal decision in <u>Perfect 10, Inc. v. Amazon.com, Inc.</u>, 508 F.3d 1146, 1160-61 (9th Cir. 2007)" and thus appear to contend that the court made a manifest error of law. (Defs.' Br. at 1.) We will address the argument on its merits despite the fact that it could and

---

[1] The injunction is being issued today. We asked the parties to confer and attempt to agree on the language of a proposed injunction order. They recently submitted their separate proposals, and a number of their suggestions are included in the order we are entering.

- 3 -

should have been presented to us at the time of the hearings. Defendants did previously cite to Perfect 10, but only briefly, in conjunction with an argument that displaying thumbnail images of videos is fair use. They argued in perfunctory fashion that myVidster users did not directly infringe Flava's works, but did not develop that argument or cite Perfect 10 in support.

To establish contributory copyright infringement, the first element that a plaintiff must prove is that a third party directly infringed its copyrighted work. We held that Flava demonstrated a likelihood of success on this element by submitting uncontradicted evidence that it owns the copyrights for works that myVidster users have, without authorization, copied and/or posted on myVidster. The vast majority of myVidster users have not created backup copies of videos on the site, but have directed myVidster to "embed" video clips on the site through the posting/bookmarking process.[2] It is this action, to which defendants also refer as "inline linking," that is the focus of the instant motion to reconsider. Defendants contend that Perfect 10 is the "prevailing legal standard for analyzing copyright infringement in the [i]nline linking context" and that it stands for the proposition that a party who "links to third-party materials cannot be a direct infringer, but at most can be a contributory infringer." (Defs.' Br. at 2-3.)

---

[2] The parties use the terms "posting" and "bookmarking" interchangeably.

- 4 -

In <u>Perfect 10</u>, the plaintiff, Perfect 10, Inc., sued Google and Amazon.com for infringing its copyrighted photographs of nude models. The technology at issue in the appeal pertained to Google's Image Search, the search engine that identifies text in its database that is responsive to a search query and then "communicates to users the images associated with the relevant text." 508 F.3d at 1155. The Ninth Circuit described Google Image Search's inline linking process as follows:

> Google's software cannot recognize and index the images themselves. Google Image Search provides search results as a webpage of small images called "thumbnails," which are stored in Google's servers. The thumbnail images are reduced, lower-resolution versions of full-sized images stored on third-party computers.
> When a user clicks on a thumbnail image, the user's browser program interprets HTML instructions on Google's webpage. These HTML instructions direct the user's browser to cause a rectangular area (a "window") to appear on the user's computer screen. The window has two separate areas of information. The browser fills the top section of the screen with information from the Google webpage, including the thumbnail image and text. The HTML instructions also give the user's browser the address of the website publisher's computer that stores the full-size version of the thumbnail. By following the HTML instructions to access the third-party webpage, the user's browser connects to the website publisher's computer, downloads the full-size image, and makes the image appear at the bottom of the window on the user's screen. Google does not store the images that fill this lower part of the window and does not communicate the images to the user; Google simply provides HTML instructions directing a user's browser to access a third-party website. However, the top part of the window (containing the information from the Google webpage) appears to frame and comment on the bottom part of the window. Thus, the user's window appears to be filled with a single integrated presentation of the full-size image, but it is actually an image from a third-party

> website framed by information from Google's website. The process by which the webpage directs a user's browser to incorporate content from different computers into a single window is referred to as "in-line linking." The term "framing" refers to the process by which information from one computer appears to frame and annotate the in-line linked content from another computer.

508 F.3d at 1155-56 (citation and footnote omitted). Perfect 10 argued that Google's thumbnail images (stored on Google's servers) and inline links to the full-size images (stored on third parties' servers) infringed Perfect 10's copyrights. The Ninth Circuit held that Perfect 10 made a prima facie case that Google's communication of its stored thumbnail images directly infringed Perfect 10's right to display its copyrighted works,[3] but rejected the contention that Google directly infringed by "displaying" a copy of the full-size images stored on third-party computers. Id. at 1160-61. The Court explained:

> Because Google's computers do not store the photographic images, Google does not have a copy of the images for purposes of the Copyright Act. In other words, Google does not have any "material objects ... in which a work is fixed . . . and from which the work can be perceived, reproduced, or otherwise communicated" and thus cannot communicate a copy. 17 U.S.C. § 101.
> Instead of communicating a copy of the image, Google provides HTML instructions that direct a user's browser to a website publisher's computer that stores the full-size photographic image. Providing these HTML instructions is not equivalent to showing a copy. First, the HTML instructions are lines of text, not a photographic image. Second, HTML instructions do not themselves cause infringing images to appear on the

---

[3] The Court went on, however, to hold that Google's use of the thumbnail images is "highly transformative" and therefore that Google was likely to succeed on its fair-use defense regarding the thumbnails. Id. at 1165-68.

>user's computer screen.  The HTML merely gives the address of the image to the user's browser.  The browser then interacts with the computer that stores the infringing image.  It is this interaction that causes an infringing image to appear on the user's computer screen.  Google may facilitate the user's access to infringing images.  However, such assistance raises only contributory liability issues and does not constitute direct infringement of the copyright owner's display rights.
>     Perfect 10 argues that Google displays a copy of the full-size images by framing the full-size images, which gives the impression that Google is showing the image within a single Google webpage.  While in-line linking and framing may cause some computer users to believe they are viewing a single Google webpage, the Copyright Act, unlike the Trademark Act, does not protect a copyright holder against acts that cause consumer confusion.

Id. at 1160-61 (citations omitted).  The Court applied the same reasoning to conclude that Perfect 10 was not likely to prevail on its claim that Google directly infringed its right to distribute its full-sized images.  Id. at 1162-63.

According to defendants, Perfect 10 instructs that "the critical factual inquiry is the location of the infringing image." Defendants argue that the videos posted to myVidster are hosted on third-party servers, as were the full-size images in Perfect 10, and "the way the videos are linked and displayed is the same as in Perfect 10." (Defs.' Br. at 5.)  The video links, or "embeds," that appear on myVidster are shown to the viewer as if they are part of the myVidster site, even though the videos are hosted by (stored on) a third-party server.

- 7 -

We decline to apply Perfect 10 to this case. The Ninth Circuit's decision is not binding on this court; moreover, it is highly fact-specific and distinguishable. Defendants assert that the cases involve "essentially the same technology." Both cases may involve inline linking,[4] but the processes are quite different. The relevant comparison is between the conduct of Google and the conduct of myVidster's *users*, not between Google and myVidster. In response to a search query, Google's image search engine uses an automated process to display search results through inline linking. In contrast, myVidster's users do not employ any sort of automation to determine which videos they bookmark; rather, they personally select and submit videos for inline linking/embedding on myVidster. (And many of those hand-picked videos are infringing.) Google's use of inline linking is neutral to the content of the images; that of myVidster's users is not.

To the extent that Perfect 10 can be read to stand for the proposition that inline linking can never cause a display of images or videos that would give rise to a claim of direct copyright infringement, we respectfully disagree. In our view, a website's servers need not actually store a copy of a work in order to "display" it. The fact that the majority of the videos displayed

---

[4] We say "may" because while it does appear that myVidster uses inline links (or "embeds") of videos, defendants provided little to no detailed evidence about exactly how myVidster works. We are unable to provide the kind of lengthy and technical description of the kind provided by the Ninth Circuit regarding Google's process.

- 8 -

on myVidster reside on a third-party server does not mean that myVidster users are not causing a "display" to be made by bookmarking those videos. The display of a video on myVidster can be initiated by going to a myVidster URL and clicking "play"; that is the point of bookmarking videos on myVidster--a user can navigate to a collection of myVidster videos and does not have to go to each separate source site to view them.

Because we find that Perfect 10 is inapplicable to the instant case, defendants' motion will be denied.

## CONCLUSION

For the foregoing reasons, defendants' motion to reconsider the issuance of a preliminary injunction [84] is denied.

DATE:      September 1, 2011

ENTER:     _____
           John F. Grady, United States District Judge