**Exhibit A**

# UNITED STATES DISTRCT COURT

## NORTHERN DISTRICT OF ILLINOIS

### EASTERN DIVISION

| | | |
|---|---|---|
| FLAVA WORKS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-cv-06517 |
| | ) | |
| MARQUES RONDALE GUNTER | ) | The Hon. John F. Grady |
| dba MYVIDSTER.COM, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>DEFENDANT VOXEL DOT NET, INC.'S MEMORANDUM<br>IN SUPPORT OF ITS<br>MOTION FOR SUMMARY JUDGMENT</u>

TABLE OF AUTHORITIES                                                                                          iiii

BACKGROUND                                                                                                         1

ARGUMENT                                                                                                              6

   I.     Summary Judgment Standard                                                                        6

   II.    The DMCA Shields Voxel from Liability Arising from Copyright Infringement           7

      A. Voxel Complied With DMCA General Eligibility Requirements                             7

      B. Voxel Complied With DMCA Specific Eligibility Requirements                           8

      C. Voxel Does Not Lose Safe Harbor Eligibility Under 512(c)(1)(B)                       14

      D. Voxel Immune From All Claims Alleging Copyright Infringement                      15

   III.   Flava Works Fails to State a Claim for Copyright Infringement                          15

      A. Flava Fails to State a Claim for Direct Copyright Infringement                      15

      B. Flava Fails to State a Claim for Contributory Copyright Infringement                16

      C. Flava Fails to State Claim for Vicarious Copyright Infringement                     18

      D. Flava Fails to State a Claim for Inducement of Copyright Infringement               18

      E. Summary Judgment Must Be Granted in Favor of Voxel on all Copyright Claims          20

   IV.   Summary Judgment Must Be Granted on Flava's Trademark Claims Against Voxel          20

   V.    Voxel is Entitled to All Attorney's Fees and Costs Incurred Subsequent to Flava's
       Rejection of Voxel's Offer of Judgment                                               21

CONCLUSION                                                                                                         22

# TABLE OF AUTHORITIES

**Cases**

A&M Records v. Napster, Inc., 239 F.3d 1004 (9th Cir. 2001)                    17, 18

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)                                7

Arista Records LLC v. Myxer Inc., No. CV08-03935 GAF (JCX), 2011 U.S. Dist. LEXIS
    109668 (C.D. Cal. Apr. 1, 2011)                                          7, 11, 12

Capitol Records, Inc. v. MP3Tunes, LLC, No. 07 Civ. 9931 (WHP),  2011 U.S. Dist. LEXIS
    93351 (S.D.N.Y Aug 22, 2011)                                                  15

Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc., 40 F.3d 146 (7th Cir. 1994)      6

Corbis Corp. v. Amazon.com, Inc., 351 F. Supp. 2d 1090 (W.D. Was. 2004)      2, 3, 10, 11, 15

CoStarGroup, Inc. v. Loopnet, Inc., 373 F.3d 544 (4th Cir. 2004)                    16

CoStar Group, Inc. v. Loopnet, Inc., 164 F. Supp. 2d 688 (D. Md. 2001)             18

Ellison v. Robertson, 357 F. 3d 1072 (9th Cir. 2004)                                 2

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340 (1991)                     16

First Ind. Bank v. Baker, 957 F.2d 506 (7th Cir. 1992)                               6

Fisher v. Kelly, 105 F.3d 350 (7th Cir. 1997)                                       21

Flava Works, Inc. v. Gunter, No. 10-cv-6517,  2011 U.S. Dist. LEXIS 50067 (N.D. Ill. May 10,
    2011)                                                         16, 17, 18, 19, 20, 21

Harbor Motor Co. v. Arnell Chevrolet-Geo, Inc., 265 F.3d 638 (7th Cir. 2001)        21, 22

In re Aimster Copyright Litig, 252 F. Supp. 2d 634 (N.D. Ill. 2002)                8, 17

Io Grp. Inc. v. Veoh Networks, Inc., 586 F. Supp. 2d 1132 (N.D. Cal. 2008)      1, 10, 12, 13, 15

Marek v. Chesny, 473 U.S. 1 (1985)                                                  21

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)               7

MGM Studios Inc. v. Grokster, Ltd., 545 U.S. 913 (2005)                           18, 19

Monotype Imaging, Inc. v. Bitstream Inc., 376 F. Supp. 2d 877 (N.D. Ill. 2005)          17, 18

Palmer v. Marion Cnty, 327 F.3d 588 (7th Cir. 2003)          6

Perfect 10, Inc. v. Google, Inc., 653 F.3d 976 (9th Cir. 2011)          14

Perfect 10, Inc. v. Visa Int'l Serv. Ass'n, 494 F.3d 788 (9th Cir. 2007)          19

Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc., 907 F. Supp. 1361 (N.D. Cal. 1995)          16

Siliven v. Ind. Dep't of Child Servs., 635 F.3d 921 (7th Cir. 2011)          6

Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417 (1984)          18

UMG Recordings, Inc. v. Shelter Capital Partners, LLC, Nos. 09-55902, 09-56777, 10-55732, 2011 U.S. App. LEXIS 25168 (9th Cir. Dec. 20, 2011)          10, 11

UMG Recordings, Inc. v. Veoh Networks, Inc., 665 F. Supp. 2d 1099 (C.D. Cal. 2009)          10, 12

UMG Recordings, Inc. v. Veoh Networks, Inc., No. 2:07-cv-5744, 2009 U.S. Dist. LEXIS 70553 (C.D. Cal. May 5, 2009)          10, 11, 12

Viacom Int'l, Inc. v. YouTube, Inc., 718 F. Supp. 2d 514 (S.D.N.Y. 2010)          11, 13

Wolk v. Kodak Imaging Network, Inc., No. 10 Civ 4135 (RWS), 2011 U.S. Dist. LEXIS 27541 (S.D.N.Y. Mar. 17, 2011)          7, 8

## DEFENDANT VOXEL DOT NET, INC.'S MEMORANDUM
## IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

NOW COMES DEFENDANT Voxel Dot Net, Inc. ("Defendant Voxel," or "Voxel"), by and through its counsel, Mudd Law Offices, and respectfully submits its Memorandum in Support of its Motion for Summary Judgment, and states as follows:

## BACKGROUND

*DMCA*

Congress enacted the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512 to provide a mechanism by which owners of copyrights could secure the prompt removal of infringing material found online.  Title II of DMCA, the Online Copyright Infringement Liability Limitation Act ("OCILLA"), provides limitations on the liability to which Internet service providers ("ISPs") would be exposed for infringing conduct by its customers.  Title II sought to "facilitate the robust development and world-wide expansion of electronic commerce, communications, research, development, and education in the digital age."  S. Rep. No. 105-190, at 1-2 (1998). Congress understood that there were "[d]ifficult and controversial questions of copyright liability" in the digital age and "OCILLA seeks to preserve . . . strong incentives for service providers and copyright owners to cooperate to detect and deal with copyright infringements that take place in the digital networked environment."  Io Grp., Inc. v. Veoh Networks, Inc., 586 F. Supp. 2d 1132, 1142 (N.D. Cal. 2008) (quoting S. Rep. No. 105-190, at 20 (1998); H.R. Rep. 105-551(II), at 49 1998)). Further, "Congress hoped to provide 'greater certainty to service providers concerning their legal exposure for infringements that may occur in

the course of their activities.'" Ellison v. Robertson, 357 F. 3d 1072, 1076 (9th Cir. 2004) (quoting S. Rep. No. 105-190, at 20 (1998); H.R. Rep. 105-551(II), at 49-50 1998)).

Section 512 of the DMCA provides ISPs four safe harbors for copyright infringement.[1] Indeed, these safe harbors "protect qualifying service providers from liability for all monetary relief for direct, vicarious and contributory infringement." H. Rep. No. 105-796, at 64 (1998). Consequently, the DMCA protects ISPs eligible for the safe harbor protections from "all monetary relief" and "most equitable relief." Corbis Corp. v. Amazon.com, Inc., 351 F. Supp. 2d 1090, 1098-99 (W.D. Was. 2004). Accordingly, when a safe harbor has been established, a copyright owner can only seek injunctive relief. 17 U.S.C. § 512(j). Further, the available injunctive relief is so limited that for all practical purposes the issues of direct, vicarious, and contributory liability essentially become moot.[2] See Corbis, 351 F. Supp. 2d at 1110-11.

*Voxel and the DMCA*

Voxel provides backend services to publishers of websites including, but not limited to, the provision of servers on which publishers may host their websites. Statement of Material Facts (hereafter "SMF") ¶ 2. To avail itself of the DMCA's safe harbor provisions, Voxel registered its DMCA agent with the United States Copyright Office. Id. ¶ 29. Additionally, Voxel implemented a DMCA policy providing a method for copyright owners and/or their authorized agents (hereinafter simply "copyright owners") to submit notices of alleged infringement. Id. ¶¶ 23-28. Voxel also adopted a repeat infringer policy by which Voxel could terminate services provided to customers deemed to be repeat infringers under appropriate and

---

[1] The DMCA safe harbors are independent to other defenses a party may raise to copyright infringement. 17 U.S.C. § 512(l); CoStar Group, Inc. v. LoopNet, Inc., 373 F.3d 544, 552 (4th Cir. 2004)
[2] As stated in Perfect 10, Inc. v. CCBill, LLC, 488 F. 3d 1102, 1109 (9th Cir. 2007); the safe harbors "do not affect the question of liability under the various doctrines of direct, vicarious, and contributory infringement."

certain circumstances.  Id. ¶ 27.  In short, Voxel completed all requirements necessary to qualify for immunity under the DMCA's safe harbor provisions.  See id. ¶¶ 23-29; 17 U.S.C. § 512

### *myVidster*

On June 6, 2010, Defendant Marques Gunter ("Gunter"), on behalf of Defendant SalsaIndy, LLC ("SalsaIndy"), entered into a contract with Voxel whereby Voxel would provide a dedicated server to SalsaIndy for hosting SalsaIndy's website, myVidster, at the domain name myvidster.com.  SMF ¶¶ 12-13.  By contracting with Voxel, Gunter, SalsaIndy, and their website myVidster (collectively "myVidster Defendants") became subject to Voxel's DMCA policies. Id.

The myVidster website allows users to bookmark videos found on the Internet. myVidster's users can share their bookmarks with other myVidster users or the general public. Id. ¶ 5. In supplying a dedicated server to the myVidster Defendants, Voxel lacked the ability or right to control any of myVidster's content.  Id. ¶¶ 14-16.  In particular, Voxel could not directly create, upload, edit, or remove any specific content found on the myVidster website.  SMF ¶¶ 14-16.  Further, Voxel lacked control over what content myVidster's users shared with others. Id. ¶¶ 31-33.

### *Flava Works Sends DMCA Notices to Voxel*

Plaintiff Flava Works, Inc. ("Flava," or "Flava Works") produces adult entertainment in the form of DVDs, magazines, websites, pictures, streaming video, and various other media.  4th Am. Compl. ¶ 12.  In the Fall of 2010, Voxel began to receive DMCA takedown notices from Flava in relation to content found on the myVidster website that Flava believed to be infringing its copyrights.  See, e.g. SMF ¶¶ 35, 39, 42.  In each DMCA notice, Flava specifically identified the content alleged to be infringing on myVidster.  Id. ¶¶ 35, 39, 42, 45, 48, 51, 55, 57.  Upon

information and belief, Flava also served Gunter with similar takedown notices.  See id.  By such notices, Flava requested the removal of the content it believed to be infringing.  Id.

*Individual Notices*

On December 2, 2010, Voxel received a DMCA notice from Flava.  SMF ¶ 35.  That same day, Voxel notified the myVidster Defendants about the notice and asked to be notified when the content alleged to be infringing had been removed.  Id. ¶ 36.  The next day, Voxel asked again for confirmation of removal from the myVidster Defendants.  Id. ¶ 37.  On December 3, 2011, Gunter responded that the content alleged to be infringing had been removed.  Id. ¶ 38.

On December 6, 2010, Voxel received a DMCA notice via facsimile from Flava.  SMF ¶ 39.  Again, on the same day, Voxel notified the myVidster Defendants about the notice and asked to be notified when the content alleged to be infringing had been removed.  Id. ¶ 40.  Later that day, Gunter notified Voxel that the content alleged to be infringing had been removed.  Id. ¶ 41.

On December 9, 2010, Voxel received a DMCA notice via facsimile from Flava.  Id. ¶ 42.   Again, on the same day, Voxel notified the myVidster Defendants about the notice and asked to be notified when the content alleged to be infringing had been removed.  SMF ¶ 43.  Later that day, Gunter notified Voxel that the content alleged to be infringing had been removed.  Id. ¶ 44.

On January 7, 2011, Voxel received a DMCA notice[3] via facsimile from Flava.  Id. ¶ 45.  Again, on the same day, Voxel notified the myVidster Defendants about the notice and asked to be notified when the content alleged to be infringing had been removed.  Id. ¶ 46.  Later that day, Gunter notified Voxel that the content alleged to be infringing had been removed. SMF ¶ 47.

---

[3] This notice was dated January 6, 2011

On February 7, 2011, Voxel received a DMCA notice via email from Flava. Id. ¶ 48. Voxel responded to Flava by stating it does not accept DMCA notices via email. Id. ¶ 49. In any case, on February 8, 2011, Gunter notified Voxel that the content specified in Flava's February 7 email had been removed. Id. ¶ 50.

On February 10, 2011, Voxel received a DMCA notice via facsimile from Flava. SMF ¶ 51. Within twenty-four hours, Voxel notified the myVidster Defendants about the notice and asked to be notified when the content alleged to be infringing had been removed. Id. ¶ 52. On February 14, 2011, Voxel asked again for confirmation of removal from the myVidster Defendants. Id. ¶ 53. On February 15, 2011, Gunter responded that the content alleged to be infringing had been removed. Id. ¶ 54.

On February 16, 2011, Voxel received a DMCA notice via facsimile from Flava. SMF ¶ 55. Within two days, Defendant Gunter informed Voxel that the content alleged to be infringing had been removed. Id. ¶ 56.

On February 25, 2011, Voxel received a DMCA notice via email from Flava. Id. ¶ 57. By that same afternoon, Gunter informed Voxel that the content specified in Flava's February 25 email had been removed. Id. ¶ 58.

In each instance where Voxel obtained knowledge or awareness of alleged infringement from Flava, Voxel acted expeditiously to ensure the removal of or disabling of access to the content alleged to be infringing through communications with the myVidster Defendants. SMF ¶¶ 35-58. Indeed, where necessary, Voxel continued to communicate with the myVidster Defendants until obtaining confirmation that the content alleged to be infringing had, in fact, been removed. Id. ¶¶ 37, 53.

*Termination of Contract*

On March 6, 2011, Voxel sent an email to Gunter stating it intended to terminate the contract between it and the myVidster Defendants effective March 14, 2011.  SMF ¶ 18.  On March 14, 2011, Voxel terminated its contract with the myVidster Defendants and ceased providing servers to host any content associated with the myVidster website or domain myvidster.com.  Id. ¶¶ 18-19.  In other words, myVidster ceased being accessible through Voxel servers on March 14, 2011.

## ARGUMENT

This Court must grant Defendant Voxel's Motion for Summary Judgment ("Motion") because no genuine issues of material fact exist and Voxel is entitled to a judgment as a matter of law.  Indeed, the DMCA's safe harbor provisions provide Voxel with immunity that precludes any liability for any alleged infringement of the content and works about which Flava complains.  Moreover, there simply exists no factual basis under which Flava can state a claim for any of the seven counts Flava Works has brought against Defendant Voxel.  As such, this Court must grant Voxel's Motion.

## I.    Summary Judgment Standard

Summary judgment is appropriate where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Siliven v. Ind. Dep't of Child Servs., 635 F.3d 921, 925 (7th Cir. 2011); Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc., 40 F.3d 146, 150 (7th Cir. 1994).  Disputed facts are material when they "might affect the outcome of the suit."  Palmer v. Marion Cnty., 327 F.3d 588, 592 (7th Cir. 2003); First Ind. Bank v. Baker, 957 F.2d 506, 507-508 (7th Cir. 1992) (citation omitted).  Indeed, a "metaphysical doubt" will not suffice. Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986). Although a court must examine all inferences from the facts in the light most favorable to the non-moving party, summary judgment may be granted where the evidence cited by the non-moving party amounts to no more than a scintilla or is not significantly probative. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-250 (1986).

## II. The DMCA Shields Voxel from Liability Arising from Copyright Infringement

The DMCA's safe harbor provides Voxel with immunity that precludes finding Voxel liable to the Plaintiff for damages arising from claims of alleged copyright infringement. Specifically, Voxel obtains immunity through the DMCA's § 512(c) safe harbor provision that protects ISPs from liability for "the storage at the direction of a user material that resides on a system or network controlled or operated by or for the service provider." 17 U.S.C. § 512(c). To qualify for the 512(c) safe harbor, an entity must meet general eligibility requirements under the DMCA. In addition, an eligible entity must comply with specific eligibility requirements for specific instances of alleged infringement. As demonstrated below, Voxel meets all of the DMCA's eligibility requirements.

### A. Voxel Complied With DMCA General Eligibility Requirements

Section 512(c) provides immunity to "service providers." A "service provider" is broadly defined as "a provider of online services or network access, or the operator of facilities therefore." 17 U.S.C. § 512(k)(1)(B); Arista Records LLC v. Myxer Inc., No. CV08-03935 GAF (JCX), 2011 U.S. Dist. LEXIS 109668, at *51 (C.D. Cal. Apr. 1, 2011). This definition "encompasses a broad variety of Internet services." Wolk v. Kodak Imaging Network, Inc., No. 10 Civ. 4135 (RWS), 2011 U.S. Dist. LEXIS 27541, at *4-5 (S.D.N.Y. Mar. 17, 2011) (citation and internal quotations omitted). In fact, a "'service provider' is defined so broadly [under the DMCA] that [the court has] trouble imagining the existence of an online service that would not fall under the definitions." In re Aimster Copyright Litig, 252 F. Supp. 2d 634, 658 (N.D. Ill.

2002).  Here, it is undisputed that Voxel constitutes a service provider under the DMCA.  Indeed,

Voxel provided the myVidster Defendants with the online facilities, services and network access

through which they could host the myVidster website on the Internet.  SMF ¶¶ 12, 14-15.

Indeed, Flava issued DMCA notices directly to Voxel as a service provider under the DMCA.

Id. ¶¶ 35, 39, 42, 45, 48, 51, 55, 57.  Therefore, Voxel is a service provider for purposes of the

DMCA.  See id.; Wolk, 2011 U.S. Dist. LEXIS 27541, at *4-5; In re Aimster, 252 F. Supp. 2d at

658.

       In addition to being a service provider, Voxel also met the remaining requirements to

avail itself of the DMCA's safe harbor provisions.  Specifically, Voxel properly registered its

designated agent for purposes of receiving DMCA notices with the United States Copyright

Office ("Copyright Office") pursuant to § 512(c)(2).  SMF ¶ 29; see 17 U.S.C. § 512(c)(2)

(providing that "the limitations on liability established in this subsection apply to a service

provider only if [it] designated an agent to receive notifications of claimed infringement . . . on

its website . . .  and by providing to the Copyright Office . . . [certain information]").  It did so in

2006, well before any notices from Flava.  SMF ¶ 29.  Further, Voxel identifies its designated

agent on its website.  Id. ¶ 28.  Thus, Voxel met the DMCA agent requirement under § 512(c)(2).

Voxel also has implemented and provided notice of a repeat infringer policy and has not

interfered with standard technical measures thereby meeting the requirements under § 512(i)(1).

SMF ¶¶ 27, 30; see 17 U.S.C. § 512(i)(1)(A)-(B).  Based on the foregoing, Voxel complied with

all of the DMCA's general requirements for safe harbor protection and, therefore, is eligible for

the DMCA's § 512(c) safe harbor.  See id.; 17 U.S.C. § 512(c)(2); Wolk, 2011 U.S. Dist. LEXIS

27541, at *18-19.

### B. Voxel Complied With DMCA Specific Eligibility Requirements

       With respect to the specific allegations of infringement by Flava and its DMCA notices

submitted to Voxel, Voxel complied with all specific obligations and eligibility requirements under § 512(c) of the DMCA. To enjoy the DMCA's safe harbor protection with respect to any particular alleged infringement, § 512(c)(1)(A) mandates that a service provider:

> (i) [must] not have actual knowledge that the material or an activity using the material on the system or network is infringing;
>
> (ii) in the absence of such actual knowledge, [must not be] aware of facts or circumstances from which infringing activity is apparent; [and]
>
> (iii) upon obtaining such knowledge or awareness, [must act] expeditiously to remove, or disable access to, the material.

17 U.S.C. § 512(c)(1)(A). In each instance of alleged infringement by Flava, Voxel lacked both actual and apparent knowledge of infringing activity or material prior to receiving the notices from Flava. Moreover, upon receiving the notices from Flava, Voxel acted expeditiously to secure removal and/or disabling of access to the alleged infringing material. As such, and as more fully demonstrated below, Voxel met § 512's specific eligibility requirements with respect to Flava's DMCA notices.

### 1. Voxel Did Not Possess Actual Knowledge

To begin with, Voxel lacked actual knowledge of infringement. Here, the Plaintiff alleges that certain works, uploaded by users of the myVidster website, infringed its alleged copyrights. See generally 4th Am. Compl. Although Voxel provided the myVidster Defendants a dedicated server to host the myVidster website, Voxel had no control over the content and/or materials uploaded to myVidster by the website's users. SMF ¶¶ 14-16. Moreover, Voxel did not have any direct access to the content and/or materials on the myVidster website. Id. ¶¶ 15-16. In fact, Voxel lacked any actual knowledge about any specific material uploaded to and/or residing on myVidster. SMF ¶ 61. Consequently, Voxel clearly lacked actual knowledge that any such material (or activity involving such material) on the myVidster website was allegedly

infringing. See id. To this fact, Flava cannot produce any evidence to the contrary and, consequently, there cannot be any genuine issue of material fact. Given that the copyright owner maintains the burden to demonstrate that a defendant had actual knowledge of the alleged infringement under § 512(c), Flava cannot meet this burden. See UMG Recordings, Inc. v. Veoh Networks, Inc., 665 F. Supp. 2d 1099, 1107-11 (C.D. Cal. 2009) (citing Perfect 10, 488 F. 3d 1102 at 1113), aff'd sub nom, UMG Recordings, Inc. v. Shelter Capital Partners, LLC, Nos. 09-55902, 09-56777, 10-55732, 2011 U.S. App. LEXIS 25168 (9th Cir. Dec. 20, 2011). Therefore, this Court must conclude that Voxel lacked actual knowledge of any infringement of Flava's works and, therefore, met the first requirement under § 512(c)(1)(A). See id.; SMF ¶ 61.

>   2. Voxel Did Not Possess Apparent Awareness or Knowledge

In addition to the foregoing, Voxel lacked any apparent awareness or knowledge of infringement. In determining whether an

> [ISP] has such awareness, 'the question is not what a reasonable person would have deduced given all the circumstances. Instead the question is whether the service provider deliberately proceeded in the face of blatant factors of which it was aware. In other words, apparent knowledge requires evidence a service provider turned a blind eye to red flags of obvious infringement.'

Io Grp., 586 F. Supp. 2d at 1148 (quoting Corbis, 351 F. Supp. 2d at 1108). Again, Voxel had no actual knowledge of infringement of Flava's works. See supra II.B.1. Moreover, Voxel was not aware of any facts or circumstances from which infringing activity could be apparent. SMF ¶ 61. Apart from the notices received from Flava, it had no knowledge of any alleged infringement of Flava's works whatsoever. Id. To this fact, Flava again cannot produce any evidence to the contrary and, consequently, there cannot be any genuine issue of material fact. As to the notices themselves, it is clear that apparent knowledge of infringement cannot be imputed to Voxel based upon merely receiving DMCA notices from Flava. See Corbis, 351 F. Supp. 2d at 1109

("third party notices do not, in themselves, constitute red flags" from which apparent knowledge arises). Therefore, this Court must conclude that Voxel lacked apparent awareness or knowledge of any infringement of Flava's works and, therefore, met the second requirement under § 512(c)(1)(A). See id SMF ¶ 61.

### 3. Voxel Acted Expeditiously Upon Receipt of DMCA Notices from Flava

Finally, upon receiving each of Flava's DMCA notices (representing the first indication of any infringement of Flava's works), Voxel responded expeditiously to ensure the removal, or disabling of access to, the material alleged to be infringing by the myVidster Defendants. SMF ¶¶ 35-58. By doing so, Voxel acted in a manner that complied with the third requirement under § 512(c)(1)(A) and preserved its immunity. Id; 17 U.S.C § 512(c)(1)(A).

Although the DMCA notices themselves do not suffice to demonstrate a prior actual or apparent knowledge, proper DMCA notices do create sufficient knowledge to warrant action upon receipt thereof. As other circuit courts have stated, the "liability of a service provider is generally limited to failure to remove specific works which have been identified by copyright via the 'notice and takedown.'" UMG Recordings, Inc. v. Veoh Networks, Inc., No. 2:07-cv-5744, 2009 U.S. Dist. LEXIS 70553, at *22 n.5 (C.D. Cal. May 5, 2009), aff'd sub nom UMG Recordings, U.S. App. LEXIS 25168; Arista Records, 2011 U.S. Dist. LEXIS 109668, at *77 ("However, if the service provider becomes aware of a 'red flag' from which infringing activity is apparent, it will lose the limitation of liability if it takes no action."); Viacom Int'l, Inc. v. YouTube, Inc., 718 F. Supp. 2d 514, 525 (S.D.N.Y. 2010) ("if a service provider knows (from notice from the owner, or a 'red flag') of specific instances of infringement, the provider must promptly remove the infringing material."). "Whether removal is 'expeditious' necessarily implicates the circumstances presented in the particular case." Arista Records, 2011 U.S. Dist.

LEXIS 109668, at *90. Indeed, "[b]ecause the factual circumstances and technical parameters may vary from case to case, it is not possible to identify a uniform time limit for expeditious action." Id. (quoting Viacom, 718 F. Supp. 2d at 517). That being said, in UMG Recordings, the court held the defendant expeditiously removed the infringing work by having a designated agent and promptly removing the material. UMG Recordings, 665 F. Supp. 2d at 1107-1112 (C.D. Cal. 2009). Similarly, in Io Grp., the court there held that the defendant acted expeditiously to remove alleged content by responding to DMCA notices that same or within a few days of receiving the notice. Io Grp., 586 F. Supp. 2d at 1149-1150,

Given the foregoing, Voxel acted expeditiously in a manner consistent with § 512 in each instance of receiving a DMCA notice from Flava,  Specifically, Voxel received proper DMCA Notices from Flava on December 2, 2010; December 6, 2010; December 9, 2010; January 7, 2011; February 10, 2011; and, February 16, 2011. SMF ¶¶ 35, 39, 42, 45, 51, 55. With respect to each of the foregoing notices except for the February 16 notice, Voxel forwarded such DMCA notices and, by doing so, the details therein to the myVidster Defendants on either the same day Voxel received them or the very next day. Id. In forwarding the notices, Voxel also requested that the myVidster Defendants inform it that the alleged infringing works had been removed. Id. On either the same day that Voxel forwarded the notices or shortly thereafter, Defendant Gunter, on behalf of the myVidster Defendants, confirmed that each of the works had been removed. Id. ¶¶ 38, 41, 44, 47, 54. In fact, with respect to the February 16 notice, Defendant Gunter informed Voxel that the material alleged to be infringing had been removed *prior* to Voxel sending notice to the myVidster Defendants. Id.¶ 56.

Where Voxel did not receive what it believed to be a timely response from the myVidster Defendants, it sent them a subsequent inquiry.  For example, with respect to the notice received

on February 10, 2011, Voxel made an additional inquiry on February 14, 2011 because it had not heard from the myVidster Defendants.  Id. ¶ 53.  On the next day, February 15, 2011, Defendant Gunter confirmed that the materials had been removed. Id.¶ 54.

Voxel also received notices from Flava that did not constitute proper DMCA notices. Nonetheless, Voxel acted appropriately.  On February 7, 2011, Flava sent an email to Voxel alleging specific content was allegedly being infringed.  Id.¶ 48.  By the next day, Gunter notified Voxel that the content referenced in the email had been removed.  Id. ¶ 50.  Similarly, on February 25, 2011, Voxel received an email from Flava regarding alleged infringement.  Id. ¶ 57. That same day, Defendant Gunter again notified Voxel that the content referenced in the email had been removed. Id.

In each of the foregoing instances, Voxel acted expeditiously.  SMF ¶¶ 35-36, 39-40, 42-43, 45-46, 51-53.  Though it could not remove the specific material or works itself, SMF ¶¶ 15-16, 31-33, it acted expeditiously to ensure the removal of such material and works pursuant to 17 U.S.C. § 512(c)(1)(A)(iii).  Id. ¶¶ 14-16, 35-36, 39-40, 42-43, 45-46, 51-53; 17 U.S.C. § 512(c)(1)(A)(iii); Io Grp., 586 F. Supp. 2d at 1149-1150; Viacom, 718 F. Supp. 2d at 517.  Flava will not be able to produce any evidence to the contrary.  See id.  Indeed, Flava will not be able to produce any evidence suggesting that Voxel "turned a blind eye" to "obvious infringement." Io Grp., 586 F. Supp. 2d at 1148.  Thus, even if the notices from Flava did constitute "red flags," Voxel preserved its immunity by responding to the notices in an expeditious manner that secured the removal of the content, material and/or works identified by Flava as being infringing. Therefore, this Court must conclude that Voxel acted expeditiously and, therefore, met the third requirement under § 512(c)(1)(A).  SMF ¶¶ 14-16, 35-36, 39-40, 42-43, 45-46, 51-53; 17 U.S.C. § 512(c)(1)(A)(iii); Io Grp., 586 F. Supp. 2d at 1149-1150; Viacom, 718 F. Supp. 2d at 517.

4. <u>Voxel Met Specific Requirements for Safe Harbor Immunity</u>

Given the foregoing, Voxel has met the DMCA's specific requirements for safe harbor

protection as a matter of law. Therefore, this Court must grant summary judgment on this issue

in favor of Voxel.

**C. Voxel Does Not Lose Safe Harbor Eligibility Under 512(c)(1)(B)**

Although not alleged by Flava, the safe harbor protections under the DMCA can be lost

where a service provider receives "a financial benefit directly attributable to the infringing

activity, in a case in which the service provider has the right and ability to control such activity."

17 U.S.C. § 512(c)(1)(B). In this context, there exists no dispute that this provision clearly does

not apply to Voxel. Here, apart from receiving no financial benefit directly attributable to the

infringing activity,[4] Voxel did not possess any right or ability to control the alleged infringing

activity. SMF ¶¶ 14-16, 31-34. Indeed, the myVidster Defendants had a dedicated server which

precluded Voxel from accessing content found on the myVidster.com website. <u>Id.</u> ¶¶ 15-16.

Even if Voxel had the ability to remove specific content (which it did not), that ability alone does

not suffice to create the "control" required under the DMCA. <u>See</u> <u>Perfect 10</u>, 2010 U.S. Dist.

LEXIS 75071 at *44 ("The mere ability of a service provider to remove content after it has been

uploaded is insufficient as a matter of law to establish the right and ability to control the

infringing activity required by § 512(c)(1)(B).") (citation omitted), <u>aff'd</u> <u>Perfect 10, Inc. v.</u>

<u>Google, Inc.</u>, 653 F.3d 976 (9th Cir. 2011) (affirmed on the trial court's denial of entering a

---

[4] This Court does not need to address whether Voxel fails to receive a direct financial benefit from the alleged activity if Voxel did not have the right and ability to control the said activity. <u>See</u> <u>Corbis</u>, 351 F. Supp. 2d at 1110. Direct financial benefit will be found to exist only when there is a "causal relationship between the infringing activity and any financial benefit." <u>Ellison</u>, 357 F.3d at 1079. Further, a direct financial benefit does not exist "where the infringer makes the same kind of payment as non-infringing users of the provider's service." <u>CoStar</u> <u>Group, Inc. v. Loopnet, Inc.</u>, 164 F. Supp. 2d 688, 705 (D. Md. 2001) (quoting H.R. Rep. No. 105-551, Part 2, at 54). A direct financial benefit cannot occur if no users made payments to the ISP. <u>See Id.</u> at 705. Here, Voxel's business model does not allow it to directly receive payment from the myVidster's users. As such, the accused infringers do not provide any direct payments to Voxel. Consequently, Voxel does not directly receive any financial benefits from the accused infringements. <u>Ellison</u>, 357 F.3d at 1079; <u>CoStar</u>, 164 F. Supp. 2d at 705.

preliminary injunction, the circuit court did not provide any substantive analysis to the application of the DMCA); see also Capitol Records, Inc. v. MP3Tunes, LLC, No. 07 Civ. 9931 (WHP), 2011 U.S. Dist. LEXIS 93351 at *37-38 (S.D.N.Y Aug 22, 2011) ("However, 'control of infringing activity' under the DMCA requires something more than the ability to remove or block access to materials posted on a service provider's website.) (citing Corbis, 351 F. Supp. 2d at 1110; Io Grp., 586 F. Supp. 2d at 1151). Thus, Flava cannot establish that Voxel had the right and ability to control the alleged infringing activity. As such, Voxel has not lost its DMCA safe harbor protections as a matter of law in this context. Perfect 10, 2010 U.S. Dist. LEXIS 75071 at *44; Capitol Records, 2011 U.S. Dist. LEXIS 93351 at *37-38; Corbis, 351 F. Supp. 2d at 1110; Io Grp., 586 F. Supp. 2d at 1151.

### D. Voxel Immune From All Claims Alleging Copyright Infringement

Based on the foregoing, Voxel's Motion for Summary Judgment must be granted as to all claims in Flava's Fourth Amended Complaint alleging copyright infringement.

### III. Flava Works Fails to State a Claim for Copyright Infringement

Despite Voxel's immunity under the DMCA safe harbor provisions, Flava continues to allege claims against Voxel that cannot constitute copyright infringement and, thus, fail to state claims upon which relief can be based. For, the undisputed facts demonstrate the absence of any factual basis supporting a claim for copyright infringement against Voxel under any theory. Therefore, as a matter of law, this Court should grant summary judgment in favor of Voxel and against Flava on all each of Flava's copyright claims.

### A. Flava Fails to State a Claim for Direct Copyright Infringement

Voxel did not commit direct copyright infringement given the fact the alleged copying came directly from myVidster.com's users. "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work

that are original." <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 361 (1991); <u>Flava Works, Inc. v. Gunter</u>, No. 10-cv-6517, 2011 U.S. Dist. LEXIS 50067, at *5-6 (N.D. Ill. May 10, 2011) (Doc. No. 44). An ISP is not liable for direct copyright infringement "when passively storing material at the direction of users in order to make that material available to other users upon their request, do not 'copy' the material in direct violation of § 106 of the Copyright Act." <u>Id.</u> at *7 (quoting <u>CoStarGroup, Inc. v. Loopnet, Inc.</u>, 373 F.3d 544, 555 (4th Cir. 2004)). Further, "[a]lthough copyright is a strict liability statute, there should still be some element of volition or causation which is lacking where a defendant's system is merely used to create a copy by a third party." <u>Flava Works</u>, 2011 U.S. Dist. LEXIS 50067, at *7 (quoting <u>Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.</u>, 907 F. Supp. 1361, 1370 (N.D. Cal. 1995)).

Here, Voxel clearly did not directly upload the actionable material to myVidster. SMF. ¶¶ 15-16, 31-33. Given that myVidster "passively" stored the material on its website, the most that Voxel can be said to have done is "passively" store the material on the servers allocated to myVidster. <u>See id.</u> Moreover, as stated above, Voxel had no control over the content allegedly infringed on myVidster.com. As such, Voxel could not have directly infringed Flava Works' materials as a matter of law. <u>See CoStar</u>, 373 F.3d at 555. Hence, Flava Works fails to state a claim for direct copyright infringement against Voxel. <u>See Feist</u>, 499 U.S. at 361. Thus, Voxel's Motion for Summary Judgment must be granted in favor of Voxel as to Flava Works' claim of direct copyright infringement. <u>See Flava Works</u>, 2011 U.S. Dist. LEXIS 50067, at *8. (citation omitted).

## B. Flava Fails to State a Claim for Contributory Copyright Infringement

Voxel is also not liable for contributory copyright infringement. For a claim of contributory copyright infringement, a plaintiff must demonstrate "(1) a third party directly infringed a copyrighted work; (2) the defendant knew of the infringement; and (3) the defendant

materially contributed to the infringement." Flava Works, 2011 U.S. Dist. LEXIS 50067, at *8.

(citation omitted). "A defendant is liable for contributory copyright infringement when it 'with

knowledge of the infringing activity, induces,[5] causes, or materially contributes to the infringing

conduct of another.'" Monotype Imaging, Inc. v. Bitstream Inc., 376 F. Supp. 2d 877, 883 (N.D.

Ill. 2005) (quoting In re Aimster Copyright Litig., 252 F. Supp. 2d 634, 649 (N.D. Ill. 2002)),

aff'd, 334 F.3d 643 (7th Cir. 2003).

Here, Voxel did not have actual knowledge, or even apparent knowledge, of the

infringement. See infra II.B. Thus, Flava Works cannot state a claim for contributory

infringement. Moreover, even if Voxel had actual knowledge (which it did not), Voxel did not

materially contribute to the alleged infringement. Voxel did not cause the alleged direct

infringement to occur. SMF. ¶¶ 15-16, 31-33. Voxel did not provide the direct online services

or website through which the alleged direct infringers conducted their activity. Id. ¶¶ 14-15. In

fact, as stated above, Voxel did not have any control over the infringing materials. Id. ¶¶ 14-16.

Further, Voxel is not so close to the myVidster.com users as to influence what materials they

would share. Id. ¶¶ 31-34. Voxel provided only servers that the myVidster Defendants

maintained and operated. SMF ¶¶ 14-15. Thus, the distance from users of the myVidster

website and the infringing activity preclude Voxel from materially contributing to the alleged

infringement. See A&M Records v. Napster, Inc., 239 F.3d 1004, 1022 (9th Cir. 2001)

(affirming district court's holding that Napster was liable for contributory infringement because

"Napster provides 'the [web]site and facilities' for direct infringement."). Finally, Voxel's

services are predominantly, if not completely, used for substantial non-infringing uses. SMF ¶¶

20-22. A product or service may not be liable for contributory infringement if "it [is] capable of

substantial non-infringing uses." See Sony Corp. of Am. v. Universal City Studios, Inc., 464

_____

[5] Voxel has not induced copyright infringement of Flava's works. See infra III.D.

U.S. 417, 442 (1984). Consequently, Flava Works cannot state a claim for contributory copyright infringement against Voxel. See Flava Works, 2011 U.S. Dist. LEXIS 50067, at *8. Therefore, Voxel's Motion for Summary Judgment must be granted in favor of Voxel as to Flava's claim for contributory infringement. Id.; see Sony, 464 U.S. at 442; A&M Records, 239 F.3d at 1022; Monotype, 376 F. Supp. 2d at 883.

### C. Flava Fails to State Claim for Vicarious Copyright Infringement

Voxel also cannot be liable under the theory of vicarious liability. "[A] defendant is [vicariously] liable for copyright infringement if it has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." Flava Works, 2011 U.S. Dist. LEXIS 50067, at *13 (citation omitted); see MGM Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005) (citation omitted). "[T]he DMCA provides no safe harbor for vicarious infringement because it codifies both elements of vicarious liability." CoStar, 164 F. Supp. 2d at 704 (citing 3 Melville B. Nimmer and David Nimmer, Nimmer on Copyright, § 12B.04[A][2] (2001)). As demonstrated above, there exist no genuine issues of material fact that Flava cannot demonstrate the elements required for Voxel to be vicariously liable for the alleged copyright infringement at issue in this litigation. See supra II.C. Consequently, Flava Works cannot state a claim for vicarious copyright infringement against Voxel. Id. Therefore, Voxel's Motion for Summary Judgment must be granted in favor of Voxel as to Flava's claim for vicarious liability. Id.

### D. Flava Fails to State a Claim for Inducement of Copyright Infringement

As with each of Flava's other claims for copyright infringement against Voxel, it has failed to state a claim against Voxel for inducement of copyright infringement. The Supreme

Court of the United State has held "one who distributes a device[6] with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." Grokster, 545 U.S. at 919; Flava Works, 2011 U.S. Dist. LEXIS 50067, at *16. To demonstrate that inducement liability has occurred, a plaintiff must demonstrate that the distributor "'communicated an inducing message to their . . . users,' the classic example of which is an 'advertisement or solicitation that broadcasts a message designed to stimulate others to commit violations.'" Perfect 10, Inc. v. Visa Int'l Serv. Ass'n, 494 F.3d 788, 801 (9th Cir. 2007) (quoting Grokster, 545 U.S. at 937). Voxel has never promoted it services to be used for copyright infringement. SMF ¶ 22. It has not communicated an inducing message to its customers. To the contrary, Voxel expeditiously notified the myVidster Defendants when it received Flava's DMCA notices and requested notification that the alleged infringing content had been removed. Id. ¶¶ 35-37, 39-40, 42-43, 45-46, 51-53. These affirmative steps show that, far from trying to induce copyright infringement, Voxel made affirmative efforts to resolve Flava's complaints of alleged infringements. Given that Voxel took affirmative steps to remedy the alleged infringement, Flava cannot state a claim for inducement of copyright infringement against Voxel. See Grokster, 545 U.S. at 919. Therefore, Voxel's Motion for Summary Judgment must be granted in favor of Voxel as to Flava's claim for inducement of copyright infringement. Id.

---

[6] To begin with, the myVidster website, not the servers provided by Voxel, constitutes the "device" used to commit the alleged infringements. See id. ¶¶ 32-33. Thus, the inducement claim is inapplicable to Voxel. Cf. Arista Records, Inc. v. Flea World, Inc., No. 03-2670 (JBS), 2006 U.S. Dist. LEXIS 14988, at *47-49 (D.N.J. Mar. 31, 2006) (highlighting that the *devices* in Grokster and Sony were distributed directly to end-users who conducted the infringing activity).

**E. Summary Judgment Must Be Granted in Favor of Voxel on all Copyright Claims**

Based on the foregoing, this Court must grant summary judgment in favor of Voxel on all copyright claims brought against it by Flava.

**IV.    Summary Judgment Must Be Granted on Flava's Trademark Claims Against Voxel**

Flava has also failed to state any claims relating to alleged infringement by Voxel of any of Flava's trademarks.  Specifically, Flava's claims for false designation of origin; trademark and trade dress infringement; and, common law trademark and unfair competition (collectively "Trademark Claims") continue to suffer the same deficiency identified by this Court when it dismissed the Trademark Claims from Flava's First Amended Complaint.  As this Court stated some time ago, a plaintiff must allege that a defendant used the marks alleged to have been infringed in commerce.  Flava Works, 2011 U.S. Dist. LEXIS 50067, at *18-20.  Despite this principle, Flava failed to allege the defendants – much less Voxel alone – used its marks in commerce.  Id.  Consequently, this court dismissed the Trademark Claims.  Id. at *19.  Despite several opportunities to amend its complaint and remedy the deficiencies therein, Flava continues to bring the Trademark Claims against Voxel without any allegation that Voxel used Flava's marks in commerce.  See generally Fourth Am. Compl. (Counts V-VII).  Although problematic for Flava's claims, the omission is not surprising given the undisputed fact that Voxel did not use Flava's marks in commerce.  SMF ¶ 63.  "A mark is 'deemed to be in use in commerce' for services when 'it is used or displayed in the sale or advertising of services and the services are rendered in commerce . . . .'" Flava Works, 2011 U.S. Dist. LEXIS 50067, at *18-20 (quoting 15 U.S.C. § 1127).  Here, Voxel has never used or displayed any of Flava's marks in the sale or advertising of its services. SMF ¶ 63.  Simply put, Voxel has never used any of Flava Works' marks for any purpose.  Id.  Given these undisputed facts, each of Flava's Trademark

Claims suffer a fatal deficiency previously identified by the Court.  <u>Flava Works</u>, 2011 U.S. Dist.

LEXIS 50067, at *18-20.  Consequently, this Court must enter summary judgment in favor of

Voxel and against Flava with respect to Flava's claims for false designation of origin; trademark

and trade dress infringement; and, common law trademark and unfair competition.  <u>Id.</u>

**V.      Voxel is Entitled to All Attorney's Fees and Costs Incurred Subsequent to Flava's Rejection of Voxel's Offer of Judgment**

Voxel previously served Flava's counsel with an Offer of Judgment.  Given that Voxel is

not liable for any of the claims Flava Works alleges against it, Flava must pay Voxel all the

attorney's fees and costs Voxel incurred subsequent to Flava rejecting Voxel's Offer of

Judgment.  "If the judgment that the offeree finally obtains is not more favorable than the

unaccepted offer, the offeree must pay the costs incurred after the offer was made."  Fed. R. Civ.

P. 68(d).   The Supreme Court of the United States held the "term 'costs' in Rule 68 was

intended to refer to all costs properly awardable under the relevant substantive statute or other

authority." <u>Marek v. Chesny</u>, 473 U.S. 1, 9 (1985); <u>Fisher v. Kelly</u>, 105 F.3d 350, 352 (7th Cir.

1997).   Further, costs will include attorneys' fees when the "the underlying statute defines 'costs'

to include attorney's fees."  <u>Marek</u>, 473 U.S. at 9.  The Seventh Circuit has held that a prevailing

party is entitled to attorneys' fees pursuant to Rule 68 under the Copyright Act.  <u>Harbor Motor</u>

<u>Co. v. Arnell Chevrolet-Geo, Inc.</u>, 265 F.3d 638, 645-646 (7th Cir. 2001).

Voxel sent its Offer of Judgment, for $2,500.00, to Flava Works on April 27, 2011.  SMF

¶ 64.  Flava failed to respond to the Offer of Judgment, and thus rejected Voxel's offer.  <u>See</u> Fed.

R. Civ. P. 68(a).  Flava neither can prevail on any of its claims nor show that Voxel is liable for

any damages.  *Supra*.  As such, Flava is not entitled to any damages from Voxel.  <u>Id.</u>

Consequently, with this Court granting summary judgment in favor of Voxel on all Counts,

Flava will not have received a judgment against Voxel more favorable than the rejected offer.

Thus, Voxel is entitled to all costs, including attorneys' fees, incurred after it made its Offer of Judgment. See Fed. R. Civ. P. 68(d); See Harbor Motor Co., 265 F. 3d at 645-646.  Therefore, this Court must grant Voxel relief in the form of awarding it all costs, including attorneys' fees, incurred after it made its Offer of Judgment.

## CONCLUSION

For the foregoing reasons and those in its Motion for Summary Judgment, Defendant Voxel Dot Net, Inc. respectfully moves this Court to grant its Motion for Summary Judgment

Dated: January 12, 2012       Respectfully submitted,
   Chicago, Illinois

               DEFENDANT
               VOXEL DOT NET, INC.

               /s/ Mark A. Petrolis

               By: One of Its Attorneys
               Mark A. Petrolis
               MUDD LAW OFFICES
               3114 W. Irving Park Road, Suite 1W
               Chicago, Illinois 60618
               773.588.5410
               773.588.5440 (Fax)
               mpetrolis@muddlawoffices.com
               ARDC: 6300549