## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Flava Works, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10-cv-06517 |
| | ) | |
| | ) | |
| v. | ) | FIFTH AMENDED COMPLAINT |
| | ) | |
| Marques Rondale Gunter | ) | |
| d/b/a | ) | JURY TRIAL DEMANDED |
| myVidster.com, myVidster.com, | ) | |
| Salsaindy, LLC, | ) | |
| John Does 1-26, using screen names: | ) | |
| Abank, Amaterialhag, Azzfetishfreak, | ) | |
| Blka2cutie, Bootysmell, Brod706, | ) | |
| Cmoneyw, Damon1420, Diamonds, | ) | |
| Fifthcharactermuppet, FuQnHot, | ) | |
| Iiluvbttms76, In4deep, Johnjackson, | ) | |
| Kblkmusicman, Maalik, Nellyhayes, | ) | |
| Neumagic, Nycbigdikknigg2010, | ) | |
| Onlidingding, , Phatboi01, | ) | |
| Sexy909boy, Sexyblk223, | ) | |
| Smilez, Taylormade99, Tazze_t, | ) | |
| Voxel Dot Net, Inc., | ) | |
| LeaseWeb USA, Inc., LeaseWeb B.V., | ) | |
| and LeaseWeb.com, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>FIFTH AMENDED COMPLAINT</u>

Plaintiff, Flava Works, Inc. (hereinafter "Plaintiff" or "Flava Works"), by and through its

attorney, Meanith Huon, and for its Fourth Amended Complaint against the Defendants,

Marques Rondale Gunter d/b/a myVidster.com, myVidster.com, SalsaIndy, LLC, and John Does

1 through 26, and Voxel Dot Net, Inc., LeaseWeb USA, Inc., LeaseWeb B.V., and

LeaseWeb.com, states as follows:

## **NATURE OF THE ACTION**

1.      This is an action for copyright infringement pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq*.; for trademark infringement pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq*., as amended; for  false designation of origin, trade dress infringement, and unfair competition; for trademark infringement and unfair competition arising under the common law of the State of Illinois.  Plaintiff brings this action to stop Defendants from infringing, and promoting, encouraging, enabling and facilitating the infringement of Plaintiff's copyrights, trademarks and trade dress (collectively "Flava Works' Intellectual Property") on the Internet.

2.      Plaintiffs bring this action to stop Defendants from continuing to encourage, enable and profit from the infringement of Plaintiffs copyrights, trademarks and trade dress on the Internet. Defendants have developed and control a network largely dedicated to the repeated and exploitative unauthorized distribution and reproduction of  Plaintiffs works. Defendants provide their users with a fully integrated infrastructure that connects them to infringing digital files. The website even encourages users to infringe by storing copyrighted materials and inviting their friends to visit the site with links to the copyrighted materials.   Defendants are building a business based on the daily massive infringement  Defendants' conduct has caused and continues to cause  Plaintiffs grave and irreparable harm.

## **THE PARTIES**

3.      Plaintiff is a corporation incorporated under the laws of the State of Florida with its principal place of business at 2610 N. Miami Ave., Miami, Florida 33127, and an office in Chicago, Illinois at 933 W. Irving Park Rd., Ste. C, Chicago, Illinois 60613.

4.      Defendant, Marques Rondale Gunter (hereinafter "Gunter") created, owns and operates the website Myvidster.com (hereinafter "myVidster").   Defendant, Gunter d/b/a myVidster, has created a social networking website through which site members, the Defendant John Does, among others, can bookmark and store files of copyrighted materials and videos directly to myVidster and/or post links to third party websites on which the files are available. On information and belief, Defendant, Gunter, resides in the state of Indiana and Michigan at: 735 Lexington Avenue, Apt. 26, Indianapolis, Indiana 46203 and 21022 Reimanville Avenue, Ferndale, Michigan 48220.   Defendant, myVidster.com, is a domain name and website owned by Defendant, Gunter.

5.      On information and belief, Defendant, SalsaIndy, LLC is an entity formed, owned, controlled, managed and/or operated by Defendant, Gunter, in some connection with myVidster.

6.      On information and belief, at all relevant times,  Defendants, John Does 1-26 (hereinafter collectively "John Does" or individually "John Doe 1," "John Doe 2," etc.), are individuals and/or business entities whose real identities are currently unknown and whose whereabouts are currently unknown.  On information and belief, Defendants, John Does 1-26, actively contributed to this infringement by posting files, storing videos, sharing files, and/or posting links on the site.

7.      On information and belief, Defendant, Voxel Dot Net, Inc.  ("Voxel Dot Net"), was the domain server that hosted the website, myVidster.com.

8.     On information and belief, Defendant, LeaseWeb.com, is now the domain server that hosts the website, myVidster.com.   On information and belief, page 4 of the  General Terms and Conditions document on LeaseWeb.com for LeaseWeb USA, Inc. defines "LeaseWeb" as "in relation to Service(s) and/or Equipment provided to Customer it means Lease Web USA, Inc. . . . in relation to Network it means LeaseWeb USA, Inc. and its Affiliates (e.g. LeaseWeb B.V. and LeaseWeb Germany GmbH)".

http://www.leaseweb.us/uploads/legal/20120322_USA_General_Terms_v2012-1_1.pdf.  Exhibit "V".

On information and belief, page 4 of the General Conditions on LeaseWeb.com for LeaseWeb B.V. defines "LeaseWeb" as "in relation to Service(s) and/or Equipment provided to Customer it means Lease Web B.V. in relation to Network it means LeaseWeb  B.V. and its Affiliates (e.g. LeaseWeb USA, Inc. and LeaseWeb Germany GmbH)".

http://www.leaseweb.nl/uploads/legal/20120306_NL_General_Conditions_v2012-1_1.pdf.

Exhibit "W".  On information and belief, "LeaseWeb" issued a press release stating that:

**LeaseWeb to open U.S Datacenter**

LeaseWeb, one of Europe's largest quality hosting providers, has today announced it will open its first datacenter in the United States early next year, as part of a major global expansion program to increase its footprint worldwide. The datacenter, which will be LeaseWeb's first location outside of Europe, will open in early 2011 in Manassas, Virginia, to meet a fast growing demand for hosting services in North America. The datacenter will serve both current clients and new customers. LeaseWeb's managing director Con Zwinkels has confirmed that a number of existing clients have pre-signed sales agreements to be part of the initial launch in the U.S.

LeaseWeb, part of the Ocom group of internet companies, offers a large range of innovative hosting products and services. The LeaseWeb product line includes dedicated servers, colocation, virtualization and cloud, and tailored infrastructure solutions to meet the needs of internet professionals and enterprise customers. LeaseWeb has a bandwidth capacity of more than one terabit per second (1 Tbps) in Europe and intends to offer customers comparable network excellence in the U.S.

Based in the Netherlands, LeaseWeb currently has 30,000 customer servers spread throughout five datacenter locations in Amsterdam and Brussels and peers with more than 20 internet exchanges in Europe and the U.S. LeaseWeb was founded in 1997 by Con Zwinkels and Laurens Rosenthal while they were college students. Both internet pioneers are still "hands on" directors with senior roles in the company. Founded in a house attic with a single server LeaseWeb has rapidly grown into a key player in the global hosting market.

Con Zwinkels noted that LeaseWeb will be one of the few European companies to offer quality hosting services in the United States. He said: "The United States is one of the most competitive hosting markets in the world. We expect the new LeaseWeb datacenter to be very attractive to our many global customers seeking the same hosting services and connectivity in the United States as they receive in Europe. In fact, we already have had a number of customers sign-up. Exhibit "X".

On information and belief, LeaseWeb.com has contact information for both LeaseWeb USA, Inc. and LeaseWeb B.V. The contact address for LeaseWeb USA, Inc. is:

LeaseWeb USA, Inc.
9480 Innovation Drive
Suite 1, Manassas
Virginia 20110.

http://www.leaseweb.com/en/contact. Defendants, LeaseWeb USA, Inc. and LeaseWeb B.V. will be referred to collectively as "LeaseWeb".

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, § 1338 and § 1367; pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq.*; pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.*, as amended.

10.      On information and belief, Defendants actively target the Illinois market and consumers. Defendant, LeaseWeb, promotes itself as "one of the few European companies to offer quality hosting services in the United States." This Court has jurisdiction over Defendants, because Defendants are subject to personal jurisdiction in the State of Illinois

under the Illinois Long Arm Statute. On information and belief, LeaseWeb USA, Inc. has filed

an Affidavit stating that LeaseWeb USA, Inc. has a customer in Illinois.   See Affidavit of

Dewey Coerper, III produced by Defendant, LeaseWeb USA, Inc.  A website that is interactive

and commercial in nature that promotes the company or that solicits users from other

jurisdictions to engage in a business relationship engaged in an intentional and continuous

business contact that subjects the website to personal jurisdiction of the federal courts in those

jurisdictions. <u>Publications International, Ltd. v. Burke/Triolo, Inc.,</u> 121 F. Supp. 2d 1178 (N.D.

Illinois 2000).  On information and belief, LeaseWeb.com is an interactive and commercial

website that promotes LeaseWeb.com and allows users to request information on a contact form.

On information and belief, LeaseWeb.com has a tool to check domain availability and invites

users to call, email fax, or contact LeaseWeb.com for more information and services it offers.

On information and belief, paragraph 40 of the Unites States indictment against

Megaupload.com and Megaupload Limited describes "LeaseWeb" as follows:

> Leaseweb (Leaseweb.com) is a multinational Internet hosting provider that is
> headquartered in the Netherlands.  Leaseweb has eight datacenters in the Netherlands,
> Belgium, Germany, and the United    States, including in the Eastern District of Virginia.
> More than 630 computer servers in the Netherlands are owned and hosted by Leaseweb
> for the benefit of the Mega Conspiracy, and an additional sixty servers hosted at
> Leaseweb were purchased by the Mega Conspiracy in October 2011.  Leaseweb
> continues to provide the Mega Conspiracy with leased computers, Internet
> hosting, and support services as of the date of this Indictment.  U.S. v. Megaupload,
> Limited, et. al.,  1:12CR3 (E.D. Virginia 2012).

11.     Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial

part of the events or omissions giving rise to the claim occurred, or a substantial part of property

that is the subject of the action is situated, in this district.


## **<u>FACTUAL BACKGROUND</u>**

## PLAINTIFF FLAVA WORKS, INC.

12.     Plaintiff is a corporation that produces adult entertainment in the form of DVDs, magazines, websites, pictures, streaming video and various other media.

13.     Plaintiff distributes its adult entertainment through various distributors and licensees, as well as through its websites: www.FlavaMen.com, www.CocoDorm.com, www.CocoStore.com, www.PapiCock.com, and www.ThugBoy.com, among others.

14.     Plaintiff has applied for and has registered various copyrights for its works. See attached Exhibit A for works with registered copyrights.  See attached Exhibit B works for which some copyrights may be pending.

15.     Plaintiff has several registered trademarks, and has applications pending for several others, for its various word and design marks as they are used in connection with DVDs, magazines, websites, streaming video and other forms of media featuring adult entertainment. Specifically, Plaintiff's registered trademarks include "Flavamen", "CocoStore" and "CocoDorm".  See attached Exhibit C for registered trademarks owned by Plaintiff.

16.     Plaintiff has common law trademarks in the various word and design marks mentioned above that are contained in the attached Exhibit D as used in connection with DVDs, magazines, websites, streaming video and other forms of media featuring adult entertainment. Specifically, Plaintiff's common law and pending trademarks include "Thugboy", "Raw Rods", "Dorm Life", "Flava Works",  "Papicock", and "Miami Uncut".  See attached Exhibit D for pending and common law trademarks owned by Plaintiff.

17.     Plaintiff is recognized nationally and internationally as a leader in the field of production and distribution of adult entertainment due, in large part, to the goodwill and name

recognition associated with its trademarks, as well as the high quality content that is associated

with its copyrighted material.

## THE INTERNET

18.     The Internet is a worldwide network of millions of computers and

computer networks that enable computer users to communicate with one another through

the transmission of information from one computer to another. Recent years have seen

the development and refinement of technologies for the reproduction and distribution of

various types of infringing files, including files containing images and motion pictures.

19.     Most of the Internet is freely accessible by the public.  Many websites are freely

accessible by the public.  On or about May 26, 2011, web leaders at the G8 Summit, which

brings leaders from various countries together, pushed for a free Internet.  See

http://www.thehostingnews.com/web-leaders-push-for-free-internet-at-g8-18203.html

## DEFENDANT, MYVIDSTER.COM

20.     On information and belief, Defendant, Gunter, created, owns and operates the

website, myVidster.com.   The registrant or owner of the website, myVidster.com, is listed as

Marques Gunter, 735 Lexington Avenue, Unit 26, Indianapolis, Indiana 46203.  Defendant,

Gunter, is the sole owner, employee, and programmer at myVidster.com.

21.     On information and belief, Defendant, Gunter has created a platform through

which he, or his agents, and/or members of the website  (i.e. the John Does) can and do store,

reproduce, distribute, share copyrighted material, including Flava Works' Intellectual Property in

various sections of the website.   See attached Group Exhibit E for screenshots of the websites.

Defendant, Gunter d/b/a myVidster, has created a social networking website through which site

members, the Defendants, John Does 1 through 26, among others, can bookmark and store files

of copyrighted materials and videos directly to the myVidster and/or post links to third party

websites on which the files are available.  On his website, Defendant, Gunter d/b/a myVidster

promotes myVidster as "a social video bookmarking and backup service that lets you collect,

share and search your videos. You can also explore video collections from other users using

myVidster." See attached Group Exhibit E for screenshots of the websites.

22.     On information and belief, Defendant, Gunter d/b/a myVidster  has created and

control an extensive and integrated network that uses the Internet to connect people throughout

the world and encourages and enables them to pool various types of infringing files. Defendant

provide his users with the infrastructure, technological means and support and services to

accomplish these infringements. Defendant is involved in and enables this process in a way that

assists and facilitates his users' infringements.

23.     On information and belief, Defendant, Gunter d/b/a myVidster  has made his

network available throughout the United States and the world. At any given time, an enormous

number of infringing digital files are available for downloading through the Defendant's network.

24.     On information and belief, on the home page of myVidster, Defendant, Gunter,

posts thumbnails of copyrighted materials and videos.  Users can repost copyrighted materials

and videos on other sites like Facebook.com, Buzz.com, Digg.com or tweet the copyrighted

materials using Twitter.  Users can hot-link—linking an image or video that is saved on another

website instead of saving a copy of the image and loading it on to their own website—videos.

25.     On information and belief, Defendant, Gunter d/b/a myVidster, offers "online

storage space for those who desire to backup their bookmark videos". Defendant, Gunter, d/b/a myVidster sells storage space online at a cost of $3 for 5GB (300 videos), $5 for 10GB (500 videos), and $8 for 20GB (1000 videos). On information and belief, Defendant, Gunter, d/b/a myVidster encourages users to invite others to view the videos bookmarked and stored on my myVidster. See attached Exhibit E. Defendant, Gunter, d/b/a myVidster writes on his website: "While bookmarking videos can be a fun and addictive activity, it is more enjoyable in the company of like minded friends. The form below will send invites to your friends telling them about myVidster and you will be given the option to provide a link to your video collection." See attached Group Exhibit E.

26.     On information and belief, Defendant, Gunter, has developed a business model whereby members are encouraged to bookmark, store, and share copyrighted materials and videos. By offering storage space at very low costs—20GB (1000 videos) for $8—and encouraging users to invite friends and others to view the users' online stored videos, Defendant, Gunter, d/b/a myVidster  has purposefully created a system that makes it more difficult for copyright owners to monitor the site for infringement. Defendant, Gunter, purposefully facilitates the infringement to increase traffic to the website, thereby driving up ad revenue. See attached Group Exhibit E.

**DEFENDANTS VOXEL DOT NET AND LEASEWEB.COM**

27.     On information and belief, Voxel Dot Net was the domain server that hosts the website, myVidster.com.  On information and belief, Defendant, LeaseWeb.com, is now the domain server that hosts the website, myVidster.com.

**REPEAT INFRINGERS JOHN DOES 1-26**

28.     Defendants, John Does 1-26 are repeat infringers of myVidster.com users who caused copies of Plaintiff's copyrighted works to be made and posted on the myVidster.com website.

**NO REPEAT INFRINGER POLICY**

29.     Defendant, myVidster.com, has no repeat infringer policy.  Defendant, Gunter, will not investigate a user for repeat infringement if the copyrighted video or material is available publicly on the Internet.

30.     Defendant, myVidster.com, has approximately 25 paid subscribers, who can make backup copies of copyrighted videos—approximately the same number of repeat infringers.

31.     Defendant, Gunter, has only investigated one repeat infringer in the entire time that the website has been running, despite receiving numerous DMCA from Plaintiff and other film studios.

32.     The repeat infringers post copyrighted videos of Plaintiff that generates traffic to the website, myVidster.com.  The increased traffic generate more revenue for Defendant, myVidster.com, in the form of advertising revenue.

33.     On information and belief, Defendant, myVidster.com, has allowed, permitted, and/or encouraged the John Does 1-26 to continue posting copyrighted materials to attract more users who are potential paid subscribers and to generate more traffic.  On information and belief, the web traffic on myVidster.com has increased dramatically since Defendants have begun posting copyrighted films and works of the Plaintiff.

34.     Defendants have never shut down the account of any repeat infringer.

## INFRINGING PURPOSE OF MYVIDSTER.COM

35.     On information and belief, Defendant, Gunter, posted an entry on the myVidster.com blog expressing Defendants' infringing purpose.

36.     On information and belief, on the same blog, Defendant, Gunter, posted other entries on how to infringe on copyrighted materials.

37.     On information and belief, Defendant, Gunter, wrote that four reasons to use myVidster.com are: 1. Video  backup bypasses YouTube videos that are private or have disable embedded; 2.  Video backup bypasses video host through blog's hotlinking; 3.   Video backup works for a variety of video hosts other than YouTube; 4.  Never fearing that your online videos will get removed by the video host.

38.     On information and belief, Defendant, Gunter, gave instructions to users on how to add a plug-in for the Firefox browser that would allow users to surf the internet and copy and post copyrighted videos that are private or that have been disabled from being copied.

39.     Defendant, Gunter, has a favorite page on myVidster.com.  The favorite page is used to give an example to users on how to set up a favorite page and to encourage users to create a favorite page.

40.     Defendant, Gunter's, favorite page, Defendant, Gunter, posted copyrighted films, including a full-length film of the Star Trek movie, Crank 2, and other copyrighted films and music videos.

41.    Defendant, Gunter's, policy is that he cannot determine whether or not a film or video or material is copyrighted.

42.    Defendant, Gunter's, policy is that a film or movie or image or material is not copyrighted if the aforesaid work is publicly accessible on the Internet.

## INDEXING OF COPYRIGHTED WORKS

43.    Defendants use Plaintiff's trademarks in commerce.

44.    Defendant, myVidster.com, use Plaintiff's trademarks by indexing all the tags that are used to identify a copyrighted video or work.   The videos posted on myVidster.com have tags that identify the videos.  These tags are indexed, allowing the videos to be easily searched for by a user.

45.    Users search for copyrighted works on Defendants' website by entering search terms for the tags which are Plaintiff's trademark names like "CocoDorm", "Thugboy", or "Papicock".

46.    Plaintiff has agreements with websites on the Internet to promote trailers of its copyrighted videos for a fee or for a share of the fees generated.

47.    By copying and storing Plaintiff's copyrighted works on Defendants' website and by indexing Plaintiff's trademarks on Defendants' website, Defendants have caused confusion about its origin.

48.    The confusion as to the origin of the mark is evident.  Defendants and its attorneys have argued incorrectly in open court and at deposition that Plaintiff's copyrighted works are posted for free on other websites.  This is incorrect.  Plaintiff has agreements with

website to promote teaser videos that redirect to Plaintiff's website where users must pay for the full length film.

49.     However, Defendants' used of Plaintiff's trademarks in its search engine and indexing of Plaintiff's trademarks has created confusion in the marketplace.   Consumers are conditioned to incorrectly believe that Plaintiff's copyrighted videos and films are free and can be downloaded from any website for free, including myVidster.com.

50.     Defendant, myVidster.com, generates advertising revenue from the traffic to it website.

51.     On information and belief, the John Does 1-26, by repeatedly posting copyright materials on myVidster.com, have generated increased traffic for myVidster.com.

52.     Defendant, myVidster.com, has evolved into a website that caters to  viewers of gay black adult film—the same niche that Plaintiff sells to.

53.     On information and belief, Defendant, myVidster.com's, lack of a repeat infringer policy has made its website a marketplace for users to post, share, and download Plaintiff's copyrighted works.

54.     Users can easily search for Plaintiff's copyrighted works by entering in Plaintiff's trademarks into Defendants' search engine.

55.     Defendant, myVidster.com, has technology and the means to filter out Plaintiff's trademarks in its index and search engine but has refused to implement such filtering.

56.     Defendants use Plaintiff's trademarks in commerce in that Defendants index Plaintiff's trademarks and allow users to search for Plaintiff's copyrighted works by performing key word searches.   Defendants allow a group of repeat infringers to continue posting Plaintiff's copyrighted works with the trademarks entered as a tag.   Users come to Defendants' website to

search for copyrighted works by searching the tags consisting of the trademarks. This system for rampant copyright infringement increases web traffic, generating advertising revenue and more paid subscribers.

57.     The use of the tags consisting of Plaintiff's trademarks in Defendants' search engine and indexing system makes it easy for users to locate Plaintiff's copyrighted works that have been posted on the website.

58.     The use of Plaintiff's trademarks as part of its tags and indexing system is done in the connection with Defendants' sale of services of backup storage of videos to users.

59.     The use of Plaintiff's trademarks in commerce is done in connection with the distribution of Defendants' services. Defendants offer services in the form of allowing users to bookmark, post, download, and share copyrighted videos. The trademarks are entered into the system and indexed as tags. Users then search for the copyrighted videos by entering the trademarks into the search engine. The use of the trademarks as tags and the indexing system is done in connection with the distribution of Defendants' services as a website for the posting and sharing of copyrighted videos. A user needs a tag and index system to locate a video that another user posted with the intention of sharing that video for everyone in the stream of commerce on the Internet.

## DEFENDANTS' RIGHT AND ABILITY TO SUPERVISE

60.     Defendants reserved the right to control access to its system, but failed to police its virtual premises.

61.     Defendants have the right and ability to supervise the users' activities. Defendants have a flag system to monitor for copyright infringement. All flags go to Defendant,

Gunter, who has implemented a filter on the flags because of the numerous flags he receives each day.

62.     Defendants have posted terms of service and other policies on its website.

63.     Defendants have the technology to filter trademark names.

64.     On information and belief, Defendant, Gunter, has the programming ability to create software to prevent the uploading of the same video more than once or to prevent the uploading of a copyrighted video.  On information and belief, Defendants can easily purchase the aforesaid software in the marketplace.

65.     Defendants have refused to police its website for repeat infringers.

66.     Defendant, Gunter, has adopted an unreasonable definition of "repeat infringer".

67.     Defendant, Gunter, has refused to make any determination as to whether a video is copyrighted if the video is publicly available.  Defendants have refused to abide by the copyright notice or trademark notice or the FBI warning that appears in copyrighted videos and films.

67.     Defendants have refused to investigate repeat infringers who continued posting copyrighted works.  Defendants' stated policy that it will not investigate a repeat infringer if the copyrighted work is available publicly is not reasonable, since most of the Internet is publicly available.

68.     Defendants have refused to promptly investigate flags of copyright infringement or to implement software that would remove the infringing material immediately when a user flags the video.  Defendants have not written software or implemented software that would put the flagged video in a queue pending the determination as to whether the video is copyrighted.

69.     The availability on myVidster.com is a draw for customers and users of myVidster.com.

70.     On information and belief, Defendants have turned a blind eye to the rampant copyright infringement on its website and to the activities of the repeat infringers, because the illegal activities of the repeat infringers increase traffic to Defendants' website.

72.     On information and belief, Defendants have turned a blind eye to the rampant copyright infringement on its website and to the activities of the repeat infringers, because users come to  Defendants' website to post and share copyrighted gay black adult films.


**DEFENDANTS COPYRIGHT INFRINGEMENT**

73.     Images and content owned by the Plaintiff are uploaded by users without the permission of Plaintiff.

74.     Additionally, the copyrighted material often contains Plaintiff's trademarks and/or trade dress.  Specifically, Defendants have posted videos containing Plaintiff's registered trademarks "CocoDorm" and "Flavamen".  See attached Group Exhibit C.   Defendants' reproduction and distribution of Flava Works' intellectual property causes confusion among the general public and trade as to the origin of the infringing material. Defendants' reproduction and distribution of Flava Works' intellectual property also creates the false representation that Flava Works is associated with or approves of the site myVidster.com.

75.     Defendants posted copyright materials of the Plaintiff consisting of the following full length movie or scenes from the following movie: Dorm Life 14.  See attached Group Exhibit F.

76.     Defendants posted copyright materials of the Plaintiff consisting of the following full length movie or scenes from the following movie: Flavamen Junior Year.  See attached Group Exhibit F.

77.     Defendants posted copyright materials of the Plaintiff consisting of the following full length movie or scenes from the following movie: Miami Uncut.  See attached Group Exhibit F.

78.     Defendants posted copyright materials of the Plaintiff consisting of the following full length movie or scenes from the following movie: Nightmare on Elmo Street.  See attached Group Exhibit F.

79.     Defendants posted copyright materials of the Plaintiff consisting of the following full length movie or scenes from the following movie: Raw Rods 2.  See attached Group Exhibit F.

80.     Defendants posted copyright materials of the Plaintiff consisting of the following full length movie or scenes from the following movie: Raw Rods 3.  See attached Group Exhibit F.

81.     Defendants posted copyright materials of the Plaintiff consisting of the following full length movie or scenes from the following movie: Raw Rods 4.  See attached Group Exhibit F.

82.     Defendants posted copyright materials of the Plaintiff consisting of the following full length movie or scenes from the following movie: Raw Rods 6.  See attached Group Exhibit F.

83.    Defendants posted copyright materials of the Plaintiff consisting of the following full length movie or scenes from the following movie: Raw Thugs 2.  See attached Group Exhibit F.

84.    Defendants posted copyright materials of the Plaintiff consisting of the following full length movie or scenes from the following movie: Santo Domingo 4.  See attached Group Exhibit F.

85.    Defendants posted copyright materials of the Plaintiff consisting of the following full length movie or scenes from the following movie:  Snow Ballerz 2.  See attached Group Exhibit F.

86.    Defendants posted copyright materials of the Plaintiff consisting of the following full length movie or scenes from the following movie: Snow Ballerz 4.  See attached Group Exhibit F.

87.    Defendants posted copyright materials of the Plaintiff consisting of the following full length movie or scenes from the following movie: Swaggers 2.  See attached Group Exhibit F.

88.    Defendants posted copyright materials of the Plaintiff consisting of the following full length movie or scenes from the following movie: Thugboy 4.  See attached Group Exhibit F.

89.    Defendants posted copyright materials of the Plaintiff consisting of the following full length movie or scenes from the following movie: Tyson That Good Dick.  See attached Group Exhibit F.

90.    In addition, Defendants have posted material containing Plaintiff's common law trademarks "Raw Rods", "Papicock", "Flava Works".  See attached Group Exhibit F.

91.     Many users of myVidster  have posted material that infringes Flava Works'
Intellectual Property. The most frequent contributors have been named in this complaint as John
Does 1-26.

92.     A search of Flava Works' registered trademark "CocoDorm" on myVidster
produces a result of 219 postings. See attached Group Exhibit G.

93.     A search of Flava Works' common law trademark "Dorm Life" on myVidster
produces a result of 1722 postings.  See attached Group Exhibit G.

94.     A search of Flava Works' registered trademark "Flavamen"  on myVidster
produces a result of 12466 postings.  See attached Group Exhibit G.

95.      A search of Flava Works' common law  trademark "Miami Uncut"  on myVidster
produces a result of 1572 postings.  See attached Group Exhibit G.

96.     A Google search of "MyVidster.com" and "CocoDorm" produces 110 results.
See attached Group Exhibit G.

97.     A Google search of "MyVidster.com" and "Thugboy" produces 117 results.   See
attached Group Exhibit G.

98.     A Google search of "MyVidster.com" and "Papicock" produces 200 results.   See
attached Group Exhibit G.

99.     A Google search of "MyVidster.com" and "Dorm Life" produces 132 results.
See attached Group Exhibit G.

100.    Defendants, John Does 1-26 are myVidster.com users who caused copies of
Plaintiff's copyrighted works to be made and posted on the myVidster.com website.

101.     Defendants, John Does 1-26 are repeat infringers of myVidster.com users who caused copies of Plaintiff's copyrighted works to be made and posted on the myVidster.com website.

102.     On information and belief, Defendant, myVidster.com, posts thumbnail images of Plaintiff's copyrighted works when users of myVidster.com  caused copies of Plaintiff's copyrighted works to be made and posted on the myVidster.com website.

103.     On information and belief, Defendant, myVidster.com, caused the thumbnail images of Plaintiff's copyrighted works to be made and posted on its website.

104.     The thumbnail images of Plaintiff's copyrighted works are copies of copyrighted material and infringe on Plaintiff's copyrights.

## SPONSORED LINKING

105.     When a user searches on Google for some of Flava Works, Inc.'s trademarks and myVidster.com, Google returns a search results for myVidster.com.  On the myVidster.com pages are sponsored linking of ads.

106.     When a user searches for some of Flava Works, Inc.'s trademarks on the myVidster.com website, myVidster.com returns  a search result with pages containing sponsored linking of ads.

107.     On information and belief, myVidster.com  is using Flava Works, Inc.'s trademarks to direct traffic to its website which has sponsored ads.

108.    Sponsored linking of ads is "use in commerce" within the meaning of the Lanham

Act.  J.G. Wentworth, S.S.C. Ltd. P'ship v. Settlement Funding LLC, 2007 U.S. Dist. LEXIS

288, 2007 WL 30115 (ED Pa. 2007); Buying for the Home, LLC v. Humble Abode, LLC, 459 F.

Supp. 2d 310 (D.N.J. 2006); Gov't Employees Ins. Co. v. Google, Inc., 330 F. Supp. 2d 700

(E.D. Va. 2004) ; Playboy Enters., Inc. v. Netscape Commc'ns Corp., 354 F.3d 1020 (9th Cir.

2004) ; Australian Gold Inc. v. Hatfield, 436 F.3d 1228 (10th Cir. 2006).

109.    Placing trademarks on a website to influence Internet search engines is use in

commerce within the meaning of the Lanham Act, since it directs traffic to the website with

advertising.  N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211 (11th Cir. Ga. 2008).


## DMCA NOTICES

110.    On or about May 12, 2010, Plaintiff became aware of the infringing activities that

take place on the website. On or about May 12, 2010, Plaintiff sent via U.S. Mail and email to

Defendant, Gunter, and his webhosting company, Server Beach Ltd. (hereinafter "Server

Beach"), a takedown notice pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium

Copyright Act ("DMCA takedown notice"), in which notice of the infringing material was given

to the respective entities along with a demand that said material be removed expediently. See

attached Exhibit H for a copy of the DMCA takedown notice.   The myVidster website continued

to be updated with more and more infringing material from its members.

111.    On or about July 20, 2010, Plaintiff sent, via U.S. Mail and email to  Defendant,

Gunter, and his webhosting company, Server Beach Ltd. (hereinafter "Server Beach"), a second

takedown notice pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act

("DMCA takedown notices"), in which notice of the infringing material was given to the

respective entities along with a demand that said material be removed expediently. See attached Exhibit I for a copy of the DMCA takedown notice. The myVidster website continued to be updated with more and more infringing material from its members.

112.     On or about August 21, 2010, Plaintiff sent via U.S. Mail and email to Defendant, Gunter, and his webhosting company, Server Beach Ltd. (hereinafter "Server Beach"), a third  takedown notice pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act ("DMCA takedown notices"), in which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently. See attached Exhibit J for a copy of the DMCA takedown notice.  The myVidster website continued to be updated with more and more infringing material from its members.

113.     On or about September 22, 2010, Plaintiff sent via U.S. Mail and email to Defendant, Gunter, and his webhosting company, Server Beach Ltd. (hereinafter "Server Beach"), a third  takedown notice pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act ("DMCA takedown notices"), in which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently. See attached Exhibit K for a copy of the DMCA takedown notice.  The myVidster website continued to be updated with more and more infringing material from its members.

114.     On or about December 2, 2010, Plaintiff sent, via U.S. Mail and email to Defendant, Gunter, and his webhosting company, Voxel Dot Net a  takedown notice pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act ("DMCA takedown notices"), in which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently. See attached Exhibit L for a copy of the DMCA takedown notice.

115.    On or about December 5, 2010, Plaintiff sent, via U.S. Mail and email to Defendant, Gunter, and his webhosting company, Voxel Dot Net a  takedown notice pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act ("DMCA takedown notices"), in which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently. See attached Exhibit M for a copy of the DMCA takedown notice.

116.    On or about December 9, 2010, Plaintiff sent, via U.S. Mail and email to Defendant, Gunter, and his webhosting company, Voxel Dot Net a  takedown notice pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act ("DMCA takedown notices"), in which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently. See attached Exhibit N for a copy of the DMCA takedown notice.

117.    On or about January 6, 2011, Plaintiff sent, via U.S. Mail and email to Defendant, Gunter, and his webhosting company, Voxel Dot Net a  takedown notice pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act ("DMCA takedown notices"), in which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently. See attached Exhibit O for a copy of the DMCA takedown notice.

118.    On or about February 7, 2011, Plaintiff sent, via U.S. Mail and email to Defendant, Gunter, and his webhosting company, Voxel Dot Net a  takedown notice pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act ("DMCA takedown notices"), in which notice of the infringing material was given to the respective entities along with a demand

that said material be removed expediently. See attached Exhibit P for a copy of the DMCA takedown notice.

119.    On or about February 10, 2011, Plaintiff sent, via U.S. Mail and email to Defendant, Gunter, and his webhosting company, Voxel Dot Net a  takedown notice pursuant to 17 U.S.C. § 512 *et seq.*, the Digital Millennium Copyright Act ("DMCA takedown notices"), in which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently. See attached Exhibit Q for a copy of the DMCA takedown notice.

120.    On or about February 16, 2011, Plaintiff sent, via U.S. Mail and email to Defendant, Gunter, and his webhosting company, Voxel Dot Net a  takedown notice pursuant to 17 U.S.C. § 512 *et seq.*, the Digital Millennium Copyright Act ("DMCA takedown notices"), in which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently. See attached Exhibit R for a copy of the DMCA takedown notice.

121.    On or about February 25, 2011, Plaintiff sent, via U.S. Mail and email to Defendant, Gunter, and his webhosting company, Voxel Dot Net a  takedown notice pursuant to 17 U.S.C. § 512 *et seq.*, the Digital Millennium Copyright Act ("DMCA takedown notices"), in which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently. See attached Exhibit S for a copy of the DMCA takedown notice.

122.    On or about March 15, 2011, Plaintiff sent, via U.S. Mail and email to Defendant, Gunter, and his webhosting company, Voxel Dot Net a  takedown notice pursuant to 17 U.S.C. § 512 *et seq.*, the Digital Millennium Copyright Act ("DMCA takedown notices"), in

which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently. See attached Exhibit T for a copy of the DMCA takedown notice.

123.     On or about April 22, 2011, Plaintiff sent, via U.S. Mail and email to  Defendant, Gunter, and his webhosting company, Defendant, LeaseWeb a  takedown notice pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act ("DMCA takedown notices"), in which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently. See attached Group Exhibit  U for a copy of the DMCA takedown notices.

124.     On or about April 28, 2011, August 19, 2011, August 25, 2011, August 29, 2011, August 31, 2011, September 8, 2011, Plaintiff sent, via U.S. Mail and email to  Defendant, Gunter, and his webhosting company, Defendant, LeaseWeb a  takedown notice pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act ("DMCA takedown notices"), in which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently. See attached Group Exhibit U for a copy of the DMCA takedown notices.

125.     On information and belief, Defendants have not removed all of the copyrighted images or films or works.

126.     On information and belief, Defendants did not remove all of the copyrighted images or films or works within a reasonable time.

127.     On information and belief, at all relevant times, Defendant, Gunter d/b/a myVidster took no action toward stopping, reprimanding, or banning these repeat infringers.

The online storage or shared storage feature of myVidster allows users to backup infringing material and to share it publicly with others. The original user and others can re-upload and redistribute and backup the infringing material. myVidster does not have in place any filters or identifiers to prevent the continuing and egregious infringement. For this reason, myVidster is not eligible for the limitations on liability, or the "safe harbor provisions," provided by 17 U.S.C. § 512 of the DMCA. Defendant, Gunter, as myVidster's alter ego, remains liable for any and all infringement for which myVidster is directly and/or indirectly responsible.

128.    On information and belief, at all relevant times, Defendant, Voxel Dot Net took no action toward stopping, reprimanding, or banning these repeat infringers. For this reason, Voxel Dot Net is not eligible for the limitations on liability, or the "safe harbor provisions," provided by 17 U.S.C. § 512 of the DMCA.

129.    At all relevant times, on information and belief, Defendant, Gunter, did not initially designate a DMCA Agent for myVidster to receive notice for claimed infringement as required by 17 U.S.C. § 512(c)(2), and therefore Defendant, Gunter, as myVidster's alter ego, remains liable for any and all infringement for which it is directly and/or indirectly responsible. See http://www.copyright.gov/onlinesp/list

130.    On information and belief, Defendant, Gunter d/b/a myVidster facilitates and encourages the aforesaid postings to his website willfully and with full knowledge and awareness of Plaintiff's ownership of Flava Works' Intellectual Property. On information and belief, Defendant, Gunter, encourages and facilitates the distribution of Flava Works' Intellectual Property to the public at large via myVidster to increase myVidster's traffic and, thereby, increasing myVidster's revenue.

131.    On information and belief, Defendants' use of Plaintiff's trademarks and trade dress is confusingly similar to Plaintiff's trademarks. Plaintiff's trademarks are prominently displayed to entice consumers.

132.    On information and belief, Defendants are engaging in this course of action willfully and with full knowledge and awareness of the superior trademark rights of Plaintiff, and with the purpose and intent of confusing the relevant trade and public into mistakenly believing that Defendants' services are associated with, affiliated with, or licensed by Plaintiff.

133.    Through the Defendants' conduct, Plaintiff has suffered and continues to suffer damage to its reputation and good will through the unauthorized use, reproduction and distribution of Flava Works' Intellectual Property.

134.    Plaintiff has suffered, is suffering, and will continue to suffer, irreparable damage to its reputation, potential goodwill and monies spent towards development and the goodwill accumulated through their respective trade dress, copyright and trademarks unless Defendants are restrained by this Court.

135.    Plaintiff will continue to suffer loss of profits and damage to its good will and reputation unless Defendants are restrained and enjoined by this Court.

136.    Plaintiff has no adequate remedy at law.

137.    Through Defendants' conduct, Plaintiff has suffered and continues to suffer the loss of the profits it has the right to realize through the use, reproduction and distribution of Flava Works' Intellectual Property.

138.     Plaintiff cannot be made whole unless this Court awards Plaintiff damages for Defendants' unauthorized use, reproduction and distribution of Flava Works' Intellectual Property.


## COUNT I

### (Direct Copyright Infringement as to all Defendants – 17 U.S.C. § 501.)

1-138.  Plaintiff incorporates and re-alleges paragraphs 1-138 of this Fourth Amended Complaint as paragraphs 1-138 of Count I.

139.     Defendants' conduct interferes with Plaintiff's exclusive right to reproduce, distribute and display the copyrighted works.

140.     Defendants' conduct constitutes copyright infringement that this Court may remedy under Sections 106 and 501 of the Copyright Act.

141.     Instances of copyright infringement occur whenever one of Defendants user, without authorization of the copyright owner, uses Defendants' network to download a copyrighted content file and/or images. Such acts constitute unauthorized reproduction and distribution and result in unauthorized copies. Defendants participate in, facilitate, materially contribute to and encourage these infringements.

142.     Defendants, John Does 1-26 are myVidster.com users who caused copies of Plaintiff's copyrighted works to be made and posted on the myVidster.com website.

143.     Defendants, John Does 1-26 are repeat infringers of myVidster.com users who caused copies of Plaintiff's copyrighted works to be made and posted on the myVidster.com website.

144.     Defendant, myVidster.com, posts thumbnail images of Plaintiff's copyrighted works when users of myVidster.com cause copies of Plaintiff's copyrighted works to be made and posted on the myVidster.com website.

145.     On information and belief, defendant, myVidster.com, caused the thumbnail images of Plaintiff's copyrighted works to be made and posted on its website.

146.     The thumbnail images of Plaintiff's copyrighted works are copies of copyrighted material and infringe on Plaintiff's copyrights.

147.     Defendants' aforesaid activities constitute infringement of Plaintiff's copyrights.

148.     As a result of the injury suffered by Plaintiff's business from Defendants' actions of direct copyright infringement, Plaintiff is entitled to recover actual and/or statutory damages, which shall be determined at trial, and costs of this action, including reasonable attorney's fees, as well as injunctive relief to prevent future infringement.

## COUNT II

### (Contributory Copyright Infringement.)

1-138.  Plaintiff incorporates and re-alleges paragraphs 138 of this Fourth Amended Complaint as paragraphs 1-138 of Count II.

139.    Defendant, Gunter, d/b/a myVidster provides the mechanism through which numerous individuals or entities, including John Does 1-26, without authorization, reproduced and distributed Flava Works' Intellectual Property thereby directly infringing on those copyrighted works.

140.    On information and belief, Defendant, Gunter, d/b/a myVidster had actual or constructive knowledge of or was willfully ignorant of the infringing activity and had the obligation and ability to control and stop the infringing activity, yet failed to do so.

141.    On information and belief, Defendant, Gunter, d/b/a myVidster aided, abetted, allowed, encouraged and otherwise materially contributed to helping those individuals to reproduce and distribute Flava Works' Intellectual Property through his website without regard to copyright ownership.

142.    On information and belief, Defendant, Gunter, d/b/a myVidster received direct financial benefits from the infringements by increasing its website traffic and generating revenue from storage fees.

143.    On information and belief, at all relevant times, Defendant, Voxel Dot Net took no action toward stopping, reprimanding, or banning these repeat infringers.  For this reason, Voxel Dot Net is not eligible for the limitations on liability, or the "safe harbor provisions," provided by 17 U.S.C. § 512 of the DMCA.

144.    On information and belief, at all relevant times, Defendant, LeaseWeb took no action toward stopping, reprimanding, or banning these repeat infringers.  For this reason, LeaseWeb is not eligible for the limitations on liability, or the "safe harbor provisions," provided by 17 U.S.C. § 512 of the DMCA.

145.     On information and belief, at all relevant times, Defendants, myVidster.com, Gunter d/b/a myVidster.com,  Salsaindy, LLC,  took no action toward stopping, reprimanding, or banning these repeat infringers.  For this reason, Defendants are not eligible for the limitations on liability, or the "safe harbor provisions," provided by 17 U.S.C. § 512 of the DMCA.

146.     Defendants' conduct constitutes contributory copyright infringement that this Court may remedy under Sections 106 and 501 of the Copyright Act.

147.     As a result of the injury suffered by Plaintiff's business from Defendants' actions of contributory copyright infringement, Plaintiff is entitled to recover actual and/or statutory damages, which shall be determined at trial, and costs of this action, including reasonable attorney's fees, as well as injunctive relief to prevent future infringement.

## COUNT III

### (Vicarious Copyright Infringement.)

1-138.  Plaintiff incorporates and re-alleges paragraphs 1-138 of this Fourth Amended Complaint as paragraphs 1-138 of Count III.

139.     Defendant, Gunter, d/b/a myVidster provides the mechanism through which numerous individuals or entities, including John Does 1-26, without authorization, reproduced and distributed Flava Works' Intellectual Property thereby directly infringing on those copyrighted works.

140.     On information and belief, Defendant, Gunter, d/b/a myVidster had actual or constructive knowledge of or was willfully ignorant of the infringing activity and had the obligation and ability to control and stop the infringing activity, yet failed to do so.

141. On information and belief, Defendant, Gunter, d/b/a myVidster received direct financial benefits from the infringements by increasing its website traffic and generating revenue from storage fees.

142. On information and belief, at all relevant times, Defendant, Voxel Dot Net took no action toward stopping, reprimanding, or banning these repeat infringers. For this reason, Voxel Dot Net is not eligible for the limitations on liability, or the "safe harbor provisions," provided by 17 U.S.C. § 512 of the DMCA.

143. On information and belief, at all relevant times, Defendant, LeaseWeb took no action toward stopping, reprimanding, or banning these repeat infringers. For this reason, LeaseWeb is not eligible for the limitations on liability, or the "safe harbor provisions," provided by 17 U.S.C. § 512 of the DMCA.

144. On information and belief, at all relevant times, Defendants, myVidster.com, Gunter d/b/a myVidster.com, Salsaindy, LLC, took no action toward stopping, reprimanding, or banning these repeat infringers. For this reason, Defendants are not eligible for the limitations on liability, or the "safe harbor provisions," provided by 17 U.S.C. § 512 of the DMCA.

145. On information and belief, Defendants has reserved the right or has the right to control access to the myVidster system, but has failed to police its virtual premise.

146. On information and belief, Defendants have the right and ability to supervise myVidster users pursuant to the terms of service and policies.

147. On information and belief, Defendant, myVidster, has a filtering and flagging system that can be used to filter or flag infringing materials but Defendant has refused to use this system with respect to infringing materials.

148.    Defendants can monitor its users through the flagging feature on its system. However, Defendants have failed to promptly respond to flagging for copyright infringement.

149.    Defendant, Gunter, has implemented a filter for the numerous flags that myVidster.com receives on a daily basis.

150.    Defendants have refused to adopt a reasonable definition of "repeat infringer" or to implement a reasonable repeat infringer policy.

151.    On information and belief, Defendants have permitted, encouraged, and allowed repeat infringers to continue to post copyrighted videos to draw more traffic to its website.

152.    The availability of infringing material on myVidster is a draw for its customers.

153.    The presence of infringing material on the site enhances the site's attractiveness or draws customers.

154.    Defendants' conduct constitutes vicarious copyright infringement that this Court may remedy under Sections 106 and 501 of the Copyright Act.

155.    As a result of the injury suffered by Plaintiff's business from Defendants' actions of vicarious copyright infringement, Plaintiff is entitled to recover actual and/or statutory damages, which shall be determined at trial, and costs of this action, including reasonable attorney's fees, as well as injunctive relief to prevent future infringement.


## Count IV

### (Inducement of Copyright Infringement.)

1-138.  Plaintiff incorporates and re-alleges paragraphs 1-138 of this Complaint as paragraphs 1-138 of Count IV.

139.    Defendant, Gunter, d/b/a myVidster provides the mechanism through which numerous individuals or entities, including John Does 1-26, without authorization, reproduced and distributed Flava Works' Intellectual Property thereby directly infringing on those copyrighted works.

140.    By offering online storage space for those who desire to backup their bookmark videos and encouraging users to share their videos, Defendant, Gunter, d/b/a myVidster intentionally induced the John Does, among others, to infringe Flava Works' Intellectual Property.

141.    On information and belief, Defendant, Gunter, d/b/a myVidster   had actual or constructive knowledge of or was willfully ignorant of the infringing activity and had the obligation and ability to control and stop the infringing activity, yet failed to do so.

142.    On information and belief, Defendant, Gunter, d/b/a myVidster received direct financial benefits from the infringements by increasing its website traffic and generating revenue from storage fees.

143.    Defendants' conduct constitutes inducement copyright infringement that this Court may remedy under Sections 106 and 501 of the Copyright Act.

144.    On information and belief, Defendant, Gunter, posted an entry on the myVidster.com blog expressing Defendants' infringing purpose and posted other entries on how to infringe on copyrighted materials.

145.    On information and belief, Defendant, Gunter, wrote the four reasons to use myVidster.com are: 1. Video backup bypasses YouTube videos that are private or have disable embedded; 2. Video backup bypasses video host through blog's hotlinking; 3.   Video backup

works for a variety of video hosts other than YouTube; 4. Never fearing that your online videos will get removed by the video host.

146.    On information and belief, Defendants gave instructions on users on how to add a plug-in for the Firefox browser that would allow users to surf the internet and copy and post copyrighted videos that are private or have been disabled from being copied.

147.    On information and belief, at all relevant times, Defendant, Voxel Dot Net took no action toward stopping, reprimanding, or banning these repeat infringers.  For this reason, Voxel Dot Net is not eligible for the limitations on liability, or the "safe harbor provisions," provided by 17 U.S.C. § 512 of the DMCA.

148.    On information and belief, at all relevant times, Defendant, LeaseWeb took no action toward stopping, reprimanding, or banning these repeat infringers.  For this reason, LeaseWeb is not eligible for the limitations on liability, or the "safe harbor provisions," provided by 17 U.S.C. § 512 of the DMCA.

149.    As a result of the injury suffered by Plaintiff's business from Defendants' actions of inducement of copyright infringement, Plaintiff is entitled to recover actual and/or statutory damages, which shall be determined at trial, and costs of this action, including reasonable attorney's fees, as well as injunctive relief to prevent future infringement.


## Count V

### (False Designation of Origin.)

1-138.  Plaintiff incorporates and re-alleges paragraphs 1-138 of this Fourth Amended Complaint as paragraphs 1-138 of Count V.

139.    Defendants' use Plaintiff's marks in commerce.

140.    Defendants' use Plaintiff's marks by indexing all the tags that are used to identify a copyrighted video or work.

141.    Users search for copyrighted works on Defendants' website by entering search terms for trademark names like "Flavaworks" or "Cocodorm" or other marks.

142.    Plaintiff has agreements with websites on the Internet to promote and market its copyrighted videos for a fee or for a share of the fees generated.

143.    By copying and storing all of Plaintiff's works on its website and by indexing Plaintiff's trademarks on Defendants' website, Defendants have caused confusion about its origin.

144.    Defendants' system of  tagging and indexing copyrighted works with trademark tags  has created confusion in the marketplace.  Consumers are conditioned to believe that Plaintiff's copyrighted materials are freely disseminated on the web.

145.    Defendants have used Plaintiff's trademarks in connection with the sale of its backup storage features, since users are drawn to the website to be able to search for copyrighted films indexed under the trademarks tags/key words.

146.    Defendants have used Plaintiff's trademarks in connection with the distribution of its services, since users are drawn to the website to be able to post and share and search for copyrighted videos using the trademarks as tags/key words.

147.    By engaging in the activities above, Defendant, Gunter d/b/a myVidster has caused, is causing or is likely to cause, confusion, mistake or deception among the relevant trade and public as to the existence of an affiliation, connection or association between Plaintiff and myVidster as to the origin, sponsorship or approval of Plaintiff over Defendant, Gunter's, website(s).

148. Defendant, Gunter, d/b/a myVidster has made and is making false, deceptive and misleading representations and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

149. Defendants' activities constitute false designation of origin in violation of Section 43(a) of the Lanham Act, IS U.S.C § 1 I 25(a).

150. Defendants' use of Plaintiffs' trademarks is likely to cause confusion, mistake or deception among the relevant trade and public as to the existence of an affiliation, connection, or association between Defendants and Plaintiff as to the origin, sponsorship or approval of the services provided by Defendants.

151. Defendant, Voxel Dot Net's, conduct in taking no action to stop the repeat infringement is likely to cause confusion, to cause mistake, and/or to deceive the relevant trade and public as to the existence of an affiliation, connection or association between Plaintiff and Defendant as to the origin, sponsorship or approval of Plaintiff over Defendant's website(s).

152. Defendant, LeaseWeb's, conduct in taking no action to stop the repeat infringement is likely to cause confusion, to cause mistake, and/or to deceive the relevant trade and public as to the existence of an affiliation, connection or association between Plaintiff and Defendant as to the origin, sponsorship or approval of Plaintiff over Defendant's website(s).

153. Defendants' conduct have caused irreparable injury to Plaintiff's good will and reputation and, unless enjoined by this court, will cause further irreparable injury, for which Plaintiff has no adequate remedy at law. In the alternative, as a result of the injury suffered by Plaintiff's business from Defendants, Plaintiff is entitled to recover statutory damages in an amount equal to threefold the actual damages, which shall be determined at trial, and costs of this action, including reasonable attorney's fees.

## **Count VI**

### **(Trademark and Trade Dress Infringement**.)

1-153.  Plaintiff incorporates and re-alleges paragraphs 1-153 of Count V of this Complaint as paragraphs 1-153 of Count VI.

154.     Defendants conduct is likely to cause confusion, to cause mistake, or to deceive the relevant trade and public as to the source of Flava Works' Intellectual Property.

155.     Defendants' conduct constitutes trademark and trade dress infringement and is in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1114.

156.     Defendants' acts complained herein are likely to cause confusion, mistake, and deception of the relevant trade and public who are likely to believe that the services provided by Defendants are related to, connected to, or approved by Plaintiff when in fact they are not.

157.     Defendants' acts described above have caused irreparable injury to Plaintiff's good will and reputation and, unless enjoined by this court, will cause further irreparable injury, for which Plaintiff has no adequate remedy at law.  In the alternative, as a result of the injury suffered by Plaintiff's business from Defendants' actions, Plaintiff is entitled to recover statutory damages in an amount equal to threefold the actual damages, which shall be determined at trial, and costs of this action, including reasonable attorney's fees.

## **Count VII**

### **(Common Law Trademark Infringement and Unfair Competition.)**

1-153.  Plaintiff incorporates and re-alleges paragraphs 1-153 of Count VII of this Complaint as paragraphs 1-153 of Count VII.

154.    Defendant, Gunter's, conduct is likely to cause confusion, to cause mistake, and/or to deceive the relevant trade and public as to the existence of an affiliation, connection or association between Plaintiff and Defendant as to the origin, sponsorship or approval of Plaintiff over Defendant's website(s).

155.    Defendants' acts constitute common law trademark infringement and unfair competition under the laws of the State of Illinois.

156.     Defendants' acts described above have caused irreparable injury to Plaintiff's good will and reputation and, unless enjoined by this court, will cause further irreparable injury, for which Plaintiff has no adequate remedy at law. In the alternative, as a result of the injury suffered by Plaintiff's business from Defendants' actions, Plaintiff is entitled to recover damages, which shall be determined at trial, and costs of this action, including reasonable attorney's fees.

**WHEREFORE** Plaintiff, Flava Works, Inc. respectfully requests that this Honorable Court enter the following:

1.    A judgment in its favor  of Plaintiff, Flava Works, Inc. and against the Defendants, Marques Rondale Gunter d/b/a myVidester.com, SalsaIndy, LLC, John Does 1 through 26,  Voxel Dot Net, and LeaseWeb USA, Inc., LeaseWeb B.V., and LeaseWeb.com.

2.    For a temporary restraining order, preliminary injunction, and permanent injunction against Defendants and their  aliases, his agents, servants, representatives, employees, attorneys, parents, subsidiaries, related companies, partners, successors, predecessors, assigns, and all persons acting for, with, by,

through, or under Defendants and each of them during the pendency of this action as preliminary injunction and permanently thereafter from:

a.      Restraining and enjoining Defendants from posting on any  website(s) material that infringes Flava Works' Intellectual Property, as well as from facilitating the posting on any website(s) by third parties infringing material and/or links which enable the easy access to Flava Works' Intellectual Property that is located on third party websites;

b.      Restraining and enjoining Defendants from otherwise distributing, reproducing, using, copying, streaming, making available for download, or otherwise exploiting Flava Works' Intellectual Property, including Plaintiff's copyrighted works, trademarks, trade dress, or any other product or symbol with the indicia of Plaintiff's ownership, through use of their website(s) or otherwise;

c.      Restraining and enjoining Defendants from doing any other act, through his website(s) or otherwise, which shall confuse, deceive, cause mistake, etc. among the relevant trade and general public as to the association, sponsorship and/or approval between Plaintiff and any website(s);

d.      Restraining and enjoining Defendants from otherwise Using, copying or otherwise exploiting Plaintiff's copyrights and copyrighted works;

e.      Restraining and enjoining Defendants from otherwise using, disclosing. converting, appropriating. retaining. selling, transferring or copying any property of Plaintiffs;

    f.       Restraining and enjoining Defendants from otherwise Using any of the Plaintiff's marks attached hereto or any colorable imitation of any of the marks in connection with the distribution of images and content at Defendants' website;

    g.      Restraining and enjoining Defendants from otherwise doing any other act or thing likely to, or calculated to, induce the belief that Defendants or Defendants' business is in any way affiliated, connected associated with Plaintiff, or Plaintiff's business;

    h.      Restraining and enjoining Defendants from otherwise unfairly competing with plaintiffs in any manner.

3.    Requiring Defendants to submit to the Court and to serve upon Plaintiff a report, written under oath, setting forth in detail the manner and form in which Defendant has complied with the terms of this injunction;

4.    Requiring Defendants to cease operation of the website domain myVidster.com and to transfer ownership of myVidster.com immediately to Plaintiff;

5.    Disgorging Defendants of any profits they may have made as a result of his infringement of Flava Works' Intellectual Property;

6.    Awarding Plaintiff the actual damages sustained by Plaintiff as a result of Defendants' infringement of Flava Works' Intellectual Property, the amount of which is to be determined at trial;

7.    Awarding Plaintiff compensatory and punitive damages, as deemed just and proper by this Court, as a result of the willful misconduct on the part of the Defendants;

8.      Awarding Plaintiff the costs of this action, together with reasonable attorney's fees;

9.      Awarding Plaintiff statutory damages pursuant to the Copyright Act and the Lanham Act;

10.     Awarding Plaintiff enhanced statutory damages, pursuant to 15 U.S.C. § 504(c)(2) of the Copyright Act, for Defendants' willful infringement of Plaintiff's copyrighted works;

11.     Requiring within ten (10) days after the entry of an order for either preliminary or permanent injunction, Defendants be required to turn over any files bearing any of Plaintiff's trademarks;

12.     Requiring Defendants to deliver up for destruction all DVDs, DVD covers, labels, letterhead, business cards, signs, prints, packages, wrappers, receptacles, advertisements and the like in their possession bearing the name or mark of any of the Plaintiff's trademarks or any other reproduction, counterfeit, copy or colorable imitation of the Plaintiff's trademarks.

13.     Awarding trebled damages for Defendants' infringement of Plaintiff's trademarks and copyrights.

14.     Awarding punitive damages.

15.     Ordering that the domain name myVidster.com be transferred to Plaintiff.

16.     Awarding any such other and further relief as this Court deems just, reasonable and equitable.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues properly triable by jury in this action,

pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED: May 2, 2012                                          Respectfully Submitted,

By: /s/ Meanith Huon /s/
Meanith Huon

Meanith Huon
ARDC No.: 6230996
PO Box 441
Chicago, IL 60690
312-405-2789

Flava Works, Inc.
933 W. Irving Pk. Rd., Ste. C
Chicago, IL 60613

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

Flava Works, Inc.,              )
                                   )
              **Plaintiff,**     )         **Case No. 1:10-cv-06517**
                                   )
                                   )
      **v.**                        )
                                   )
**Marques Rondale Gunter**     )
 **d/b/a**                          )
**myVidster.com, myVidster.com,**    )
**Salsaindy, LLC, et. al.**       )
                                 )
**Defendants.**             )

## PROOF OF SERVICE

       Under penalties of law, I certify that on May 2, 2012, I served the following documents or items:

          1.     Plaintiff's Fifth Amended Complaint.

by  electronically serving all counsel of record.

                                Respectfully submitted,
                                /s/ Meanith Huon
                                Meanith Huon
                                PO Box 441
                                Chicago, Illinois 60690
                                Phone: (312) 405-2789
                                E-mail: huon.meanith@gmail.com
                                IL ARDC. No.: 6230996