**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Flava Works, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 1:10-cv-06517** |
| | ) | |
| | ) | |
| v. | ) | **SIXTH AMENDED COMPLAINT** |
| | ) | |
| Marques Rondale Gunter | ) | |
| d/b/a | ) | **JURY TRIAL DEMANDED** |
| myVidster.com, Salsaindy, LLC, d/b/a | ) | |
| MyVidster.com, | ) | |
| John Does 1-26, using screen names: | ) | |
| Abank, Amaterialhag, Azzfetishfreak, | ) | |
| Blka2cutie, Bootysmell, Brod706, | ) | |
| Cmoneyw, Damon1420, Diamonds, | ) | |
| Fifthcharactermuppet, FuQnHot, | ) | |
| Iiluvbttms76, In4deep, Johnjackson, | ) | |
| Kblkmusicman, Maalik, Nellyhayes, | ) | |
| Neumagic, Nycbigdikknigg2010, | ) | |
| Onlidingding, , Phatboi01, | ) | |
| Sexy909boy, Sexyblk223, | ) | |
| Smilez, Taylormade99, Tazze_t, | ) | |
| LeaseWeb USA, Inc. | ) | |
| d/b/a LeaseWeb.com, | ) | |
| LeaseWeb B.V. d/b/a LeaseWeb.com, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**SIXTH AMENDED COMPLAINT**</u>

Plaintiff, Flava Works, Inc. (hereinafter "Plaintiff" or "Flava Works"), by and through its

attorney, Meanith Huon, and for its Sixth Amended Complaint against the Defendants, Marques

Rondale Gunter d/b/a myVidster.com, SalsaIndy, LLC d/b/a myVidster.com, John Does 1

through 26, LeaseWeb USA, Inc. d/b/a LeaseWeb.com, LeaseWeb B.V. d/b/a LeaseWeb.com,

states as follows:

**NATURE OF THE ACTION**

1.      This is an action for copyright infringement pursuant to the Copyright Act, 17

U.S.C. § 101 *et seq.*.

2.      Plaintiff brings this action to stop Defendants from copying, infringing,

promoting, encouraging, enabling and/or facilitating the infringement of Plaintiff's copyrights on

the worldwide Internet.


**THE PARTIES**

3.      Plaintiff, Flava Works, Inc. ("Flava"), is a corporation incorporated under the

laws of the State of Florida with its principal place of business at 2610 N. Miami Ave., Miami,

Florida 33127, and an office in Chicago, Illinois at 933 W. Irving Park Rd., Ste. C, Chicago,

Illinois 60613.

4.      On information and belief, Defendant, Marques Rondale Gunter (hereinafter

"Gunter") created, owns and operates the website myVidster.com (hereinafter "myVidster").

5.      On information and belief, myVidster made "copies of videos that some of its

subscribers had posted, including videos copyrighted by Flava. Although myVidster doesn't

charge for membership in its social network, it charges a fee for a premium membership that

included the backup service. That service infringed Flava's copyrights directly—it didn't just abet

others' infringements.  Flava Works, Inc. v. Gunter, 689 F.3d 754, 762 (7th Cir. Ill. 2012).

6.      On information and belief, myVidster's attorneys have represented "that

myVidster has stopped offering it [backup service]. But Flava would still be entitled to an

injunction—cessation of an unlawful practice doesn't exonerate a defendant, since unless

enjoined he might resume infringing." Flava Works, Inc. v. Gunter, 689 F.3d 754, 762 (7th Cir. Ill. 2012).

7.    "myVidster creates a web page that makes the video appear to be on myVidster's site. When you visit the site, that video and other videos appear, each in the form of a 'thumbnail,' a miniature picture of a video's opening screen shot. A click on a thumbnail activates computer code that connects the visitor's computer to the server; the connection made, the visitor is now watching the video. He's watching it through a frame that myVidster has put around it, containing ads (it's by selling ads for display on its website that myVidster finances its operation). He may think, therefore, that he's seeing the video on myVidster's website. But actually the video is being transmitted directly from the server on which the video is stored to the viewer's computer. Flava Works, Inc. v. Gunter, 689 F.3d 754, 756 (7th Cir. Ill. 2012).

8.    The thumbnail image is hosted on myVidster's servers. Flava Works, Inc. v. Gunter, 2011 U.S. Dist. LEXIS 82955 (N.D. Ill. July 27, 2011), reversed on other grounds, . Flava Works, Inc. v. Gunter, 689 F.3d 754, 756 (7th Cir. Ill. 2012).

9.    On information and belief, Defendant, SalsaIndy, LLC is an entity formed, owned, controlled, managed and/or operated by Defendant, Gunter, in some connection with myVidster.  (Defendants, Gunter and Salsa Indy, LLC, will be referred to collectively as the "myVidster Defendants".)

10.    On information and belief, at all relevant times,  Defendants, John Does 1-26 (hereinafter collectively "John Does" or individually "John Doe 1," "John Doe 2," etc.), are individuals and/or business entities whose real identities are currently unknown and whose whereabouts are currently unknown.  On information and belief, Defendants, John Does 1-26,

actively contributed to this infringement by using the backup service of myVidster to upload, post, store, share, and/or distribute Flava's copyrighted videos.

11.     On information and belief, at all relevant times, Defendant, LeaseWeb B.V d/b/a LeaseWeb.com was and/or is the domain server that hosts the website, myVidster.com, when the backup service was running.

12.     On information and belief, Defendant, LeaseWeb USA, Inc. d/b/a Leasweb.com is the U.S. Data Center and affiliate of LeaseWeb B.V.  (Defendants, LeaseWeb USA, Inc. and LeaseWeb B.V. will be referred to collectively as "LeaseWeb".)

13.     Defendants, LeaseWeb USA, Inc. and  LeaseWeb B.V., have not disclosed their affiliates as required under FRCP 7.1 and Local Rule 3.2.  See Dressler v. Mizuho Orthopedic Sys., 2010 U.S. Dist. LEXIS 93543 (S.D. Ill. Sept. 8, 2010); Shelter Mut. Ins. Co. v. Dial, 2009 U.S. Dist. LEXIS 44 (S.D. Ill. Jan. 5, 2009); Kelley v. Rinck, 2008 U.S. Dist. LEXIS 81141 (S.D. Ill. Oct. 14, 2008) ("Lastly, defendant Ozburn should be reminded of its responsibility to comply with FEDERAL RULE OF CIVIL PROCEDURE 7.1").

14.     On information and belief, page 4 of the  General Terms and Conditions document on LeaseWeb.com for LeaseWeb USA, Inc. defines "LeaseWeb" as "in relation to Service(s) and/or Equipment provided to Customer it means Lease Web USA, Inc. . . . in relation to Network it means LeaseWeb USA, Inc. and its Affiliates (e.g. LeaseWeb B.V. and LeaseWeb Germany GmbH)".  Exhibit "1".

15.     On information and belief, page 4 of the General Conditions on LeaseWeb.com for LeaseWeb B.V. defines "LeaseWeb" as "in relation to Service(s) and/or Equipment provided to Customer it means Lease Web B.V. in relation to Network it means LeaseWeb  B.V. and its Affiliates (e.g. LeaseWeb USA, Inc. and LeaseWeb Germany GmbH)".

Exhibit "2".

16.     On information and belief, "LeaseWeb" issued a press release stating that:

**LeaseWeb to open U.S Datacenter**

LeaseWeb, one of Europe's largest quality hosting providers, has today announced it will open its first datacenter in the United States early next year, as part of a major global expansion program to increase its footprint worldwide. The datacenter, which will be LeaseWeb's first location outside of Europe, will open in early 2011 in Manassas, Virginia, to meet a fast growing demand for hosting services in North America. The datacenter will serve both current clients and new customers. LeaseWeb's managing director Con Zwinkels has confirmed that a number of existing clients have pre-signed sales agreements to be part of the initial launch in the U.S.

LeaseWeb, part of the Ocom group of internet companies, offers a large range of innovative hosting products and services. The LeaseWeb product line includes dedicated servers, colocation, virtualization and cloud, and tailored infrastructure solutions to meet the needs of internet professionals and enterprise customers. LeaseWeb has a bandwidth capacity of more than one terabit per second (1 Tbps) in Europe and intends to offer customers comparable network excellence in the U.S.

Based in the Netherlands, LeaseWeb currently has 30,000 customer servers spread throughout five datacenter locations in Amsterdam and Brussels and peers with more than 20 internet exchanges in Europe and the U.S. LeaseWeb was founded in 1997 by Con Zwinkels and Laurens Rosenthal while they were college students. Both internet pioneers are still "hands on" directors with senior roles in the company. Founded in a house attic with a single server LeaseWeb has rapidly grown into a key player in the global hosting market.

Con Zwinkels noted that LeaseWeb will be one of the few European companies to offer quality hosting services in the United States. He said: "The United States is one of the most competitive hosting markets in the world. We expect the new LeaseWeb datacenter to be very attractive to our many global customers seeking the same hosting services and connectivity in the United States as they receive in Europe. In fact, we already have had a number of customers sign-up. Exhibit "3".

17.     On information and belief, LeaseWeb is expanding its cloud hosting services in

the US.  Exhibit "4".

18.     On information and belief, LeaseWeb.com has contact information for both

LeaseWeb USA, Inc. and LeaseWeb B.V on its website LeaseWeb.com.  The contact address for

LeaseWeb USA, Inc. is:

LeaseWeb USA, Inc.
9480 Innovation Drive
Suite 1, Manassas
Virginia 20110.

http://www.leaseweb.com/en/contact.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, § 1338

and § 1367 and pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq*.

20.     On information and belief, Defendants actively target the Illinois

market and consumers.   Defendant, LeaseWeb, promotes itself as "one of the few European

companies to offer quality hosting services in the United States."

21.      This Court has jurisdiction over Defendants, because Defendants are subject to

personal jurisdiction in the State of Illinois under the Illinois Long Arm Statute. On information

and belief, LeaseWeb USA, Inc. has filed an Affidavit stating that LeaseWeb USA, Inc. has a

customer in Illinois.   See Affidavit of Dewey Coerper, III produced by Defendant, LeaseWeb

USA, Inc.

22.     A website that is interactive and commercial in nature that promotes the company

or that solicits users from other jurisdictions to engage in a business relationship engaged in an

intentional and continuous business contact that subjects the website to personal jurisdiction of

the federal courts in those jurisdictions.   Publications International, Ltd. v. Burke/Triolo, Inc.,

121 F. Supp. 2d 1178 (N.D. Illinois 2000).  On information and belief, LeaseWeb.com is an

interactive and commercial website that promotes LeaseWeb  and allows users to request

information on a contact form.  On information and belief, LeaseWeb  has a tool to check

domain availability and invites users to call, email fax, or contact LeaseWeb  for more

information and services it offers.

23.      On information and belief, LeaseWeb advertises its web hosting services on

LeaseWeb.com.  Users of LeaseWeb's website can submit orders directly for hosting services.

Exhibit "5".   Illinois users who access the website can order hosting services directly on the

website.  Exhibit

24.      On information and belief, paragraph 40 of the Unites States' indictment against

Megaupload.com and Megaupload Limited describes "LeaseWeb" as follows:

> Leaseweb (Leaseweb.com) is a multinational Internet hosting provider that is
> headquartered in the Netherlands.  Leaseweb has eight datacenters in the Netherlands,
> Belgium, Germany, and the United    States, including in the Eastern District of Virginia.
> More than 630 computer servers in the Netherlands are owned and hosted by Leaseweb
> for the benefit of the Mega Conspiracy, and an additional sixty servers hosted at
> Leaseweb were purchased by the Mega Conspiracy in October 2011.  Leaseweb
> continues to provide the Mega Conspiracy with leased computers, Internet
> hosting, and support services as of the date of this Indictment.  U.S. v. Megaupload,
> Limited, et. al.,  1:12CR3 (E.D. Virginia 2012).

25.      Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial

part of the events or omissions giving rise to the claim occurred, or a substantial part of property

that is the subject of the action is situated, in this district.


## FACTUAL BACKGROUND

26.      Plaintiff is a corporation that produces adult entertainment in the form of DVDs,

magazines, websites, pictures, streaming video and various other media.

27.      Plaintiff distributes its adult entertainment through various distributors and

licensees, as well as through its websites: www.FlavaMen.com, www.CocoDorm.com,

www.CocoStore.com, www.PapiCock.com, and www.ThugBoy.com, among others.

28.     Plaintiff has applied for and has registered various copyrights for its works. See attached Exhibit "6" for works with registered copyrights.  See attached Exhibit "7" for a spreadsheet of the registered copyrights.

29.     Plaintiff has several registered and common law trademarks.   Specifically, Plaintiff's  trademarks include, but are not limited to, "Flavamen", "CocoStore" , "CocoDorm", "Thugboy", "Raw Rods", "Dorm Life", "Flava Works",  "Papicock", "Miami Uncut.".  See attached Exhibit "8".

30.     The Internet is a worldwide network of millions of computers and computer networks that enable computer users to communicate with one another through the transmission of information from one computer to another.

31.     On information and belief, Defendant, Gunter, calls myVidster  a "social video bookmarking" website. "On myVidster, users can 'bookmark' video files. (The parties also refer to this action as 'posting.') There are two types of myVidster users: (1) general users, whose memberships are free; and (2) "pro" users, who pay a small monthly ($3 or $5) or yearly ($40) fee for the additional benefit of being able to create and save backup copies of the videos that they post to myVidster." Flava Works, Inc. v. Gunter, 2011 U.S. Dist. LEXIS 82955 (N.D. Ill. July 27, 2011), reversed on other grounds, . Flava Works, Inc. v. Gunter, 689 F.3d 754, 756 (7th Cir. Ill. 2012).

32.     On information and belief, "When a user posts a video, he can 'tag' the video with keywords. MyVidster indexes those tags, enabling users to find videos through a keyword search. MyVidster filters videos into two categories—adult and non-adult. (More than half of the videos that appear on myVidster contain adult pornography.) In order to view adult videos, a website visitor must turn off the 'family filter.' Besides the adult/non-adult filter, myVidster does

not have other filters in place for content posted on the site.  <u>Flava Works, Inc. v. Gunter</u>, 2011

U.S. Dist. LEXIS 82955 (N.D. Ill. July 27, 2011), reversed on other grounds, . <u>Flava Works, Inc.

v. Gunter</u>, 689 F.3d 754, 756 (7th Cir. Ill. 2012).

33.     On information and belief, myVidster indexes tags or keywords consisting of

Flava's trademarks.

34.     On information and belief, at all relevant times, myVidster offered a backup

service to its users to make copies if the videos.

35.     On information and belief, at all relevant times, myVidster's users made backup

copies of Flava's videos.

36.     On information and belief, the myVidster Defendants have made its network

available throughout the United States and the world. At any given time, an enormous number of

infringing digital files are available for downloading through the Defendants' network.

37.     On information and belief, on the home page of myVidster, Defendant, Gunter,

posts thumbnails of copyrighted materials and videos.

38.     On information and belief, the myVidster Defendants offer "online

storage space for those who desire to backup their bookmark videos".   Defendant, Gunter, d/b/a

myVidster sells storage space online at a cost of $3 for 5GB (300 videos), $5 for 10GB (500

videos), and $8 for 20GB (1000 videos).

39.     On information and belief, the myVidster Defendants encourage users to invite

others to view the videos bookmarked and stored on my myVidster.  See attached Exhibit "9".

Defendant, Gunter, d/b/a myVidster writes on his website: "While bookmarking videos can be a

fun and addictive activity, it is more enjoyable in the company of like minded friends. The form

below will send invites to your friends telling them about myVidster and you will be given the option to provide a link to your video collection."

40.     On information and belief,  the myVidster Defendants have developed a business model whereby members are encouraged or can backup, store, and share copyrighted materials and videos.  By offering storage space at very low costs—20GB (1000 videos) for $8—and encouraging users to invite friends and others to view the users' online stored videos, Defendant, Gunter, d/b/a myVidster  has purposefully created a system that makes it more difficult for copyright owners to monitor the site for infringement.  The myVidster Defendants purposefully facilitate the infringement to increase traffic to the website, thereby driving up ad revenue. See attached Group Exhibit "9".

41.     On information and belief, at all relevant times, Defendant, LeaseWeb was or is the domain server that hosts the website, myVidster.com, when the backup service was running.

42.     Defendant, LeaseWeb, markets itself as "one of Europe's largest quality hosting providers" and announced that "it will open its first datacenter in the United States early next year, as part of a major global expansion program to increase its footprint worldwide. The datacenter, which will be LeaseWeb's first location outside of Europe, will open in early 2011 in Manassas, Virginia, to meet a fast growing demand for hosting services in North America. The datacenter will serve both current clients and new customers."


43.     On information and belief, Defendants, John Does 1-26 are repeat infringers of myVidster.com users who used its backup service to make copies of Plaintiff's copyrighted works to be made and shared them on the myVidster.com website.

**NO REPEAT INFRINGER POLICY**

44.     The myVidster Defendants have no repeat infringer policy.  Defendant, Gunter, will not investigate a user for repeat infringement if the copyrighted video or material is available publicly on the Internet.

45.      On information and belief, Defendant, Gunter, has only investigated one repeat infringer in the entire time that the website has been running, despite receiving numerous DMCA from Plaintiff and other film studios.

46.     On information and belief, the repeat infringers used the backup service of myVidster to copy and share copyrighted videos of Plaintiff that generates traffic to the website, myVidster.com.  The increased traffic generates more revenue for myVidster, in the form of advertising revenue.

47.     On information and belief, Defendant, Gunter, has never shut down the account of any repeat infringer.

**INFRINGING PURPOSE OF MYVIDSTER.COM**

48.     On information and belief, Defendant, Gunter, posted an entry on the myVidster.com blog expressing Defendants' infringing purpose.

49.     On information and belief, Defendant, Gunter, wrote that four reasons to use myVidster's backup service are: 1. Video  backup bypasses YouTube videos that are private or have disable embedded; 2.  Video backup bypasses video host through blog's hotlinking; 3. Video backup works for a variety of video hosts other than YouTube; 4.  Never fearing that your online videos will get removed by the video host.  Exhibit  "10".

50.     On information and belief, Defendant, Gunter, created or offered a plug-in for the Firefox browser that would allow users to surf the internet and make a backup copy of copyrighted videos that are private or that have been disabled from being copied.  Exhibit "11".

51.     On information and belief, on Defendant, Gunter's, favorite page, Defendant, Gunter, posted copyrighted films, including a full-length film of the Star Trek movie, Crank 2, and other copyrighted films and music videos.

52.     On information and belief, Defendant, Gunter's, policy is that he cannot determine whether or not a film or video or material is copyrighted.

53.     On information and belief, Defendant, Gunter's, policy is that a film or movie or image or material is not copyrighted if the aforesaid work is publicly accessible on the Internet.

54.     The Seventh Circuit stated that myVidster's backup " service infringed Flava's copyrights directly—it didn't just abet others' infringements."  Flava Works, Inc. v. Gunter, 689 F.3d 754, 762 (7th Cir. Ill. 2012).

## INDEXING OF COPYRIGHTED WORKS

55.     At all relevant times, the myVidster Defendants allow its users to make backup copies of Plaintiff's copyrighted videos and tag the videos.  Exhibit "12".

56.     On information and belief, the myVidster Defendants indexed all the tags that are used to identify a copyrighted video or work.   The videos posted on myVidster.com have tags that identify the videos.  These tags are indexed, allowing the videos to be easily searched for by a user.

57.     Users search for copyrighted works on Defendants' website by entering search terms for the tags which are Plaintiff's trademark names like "CocoDorm", "Thugboy", or "Papicock".

## ADVERTISING REVENUE

58.     On information and belief, myVidster.com, generates advertising revenue from the traffic to its website. Exhibit "13".

59.     On information and belief, at all relevant times, myVidster's users used the backup service to copy and share Flava's copyright materials on myVidster.com, thus, generating increased traffic for myVidster.com.

60.     On information and belief, myVidster has evolved into a website that caters to viewers of gay black adult film—the same niche that Flava produces and distributes its videos to.

61     On information and belief,  myVidster.com's, lack of a repeat infringer policy, its backup service, and its tagging/indexing system has made its website a marketplace for users to copy, share, and download Flava's copyrighted works.

62.     On information and belief, myVidster  has conditioned certain users of the Internet to believe that Flava's copyrighted works are for free and should not be paid for.

63.     On information and belief, users can easily search for certain Flava's copyrighted works by entering Flava's trademarks into myVidster's search engine.

64.     On information and belief, the myVidster Defendants  have the technology and the means to filter out Flava's trademarks in its index and search engine but has refused to implement such filtering.

65.     On information and belief,  the myVidster Defendants use Flava's trademarks in commerce in that Defendants index  Flava's trademarks and allow users to search for Flava's

copyrighted works by performing key word searches. Users can then backup copies of Flava's copyrighted videos before they are removed from the Internet.

66.    On information and belief, the myVidster Defendants allow a group of repeat infringers to continue backup and/or share Plaintiff's copyrighted works with the trademarks entered as a tag. Users come to myVidster.com's website to search for copyrighted works by searching the tags consisting of the trademarks. This system for rampant copyright infringement increases web traffic, generating advertising revenue and more paid subscribers.

67.    On information and belief , the use and indexing of Flava's trademarks is done in the connection with Defendants' sale of services of backup storage of videos to users or in connection with the distribution of Defendants' services. Defendants offer services in the form of allowing users to backup, tag, index, search for, bookmark, post, download, and share copyrighted videos.

## THE MYVIDSTER DEFENDANTS' RIGHT AND ABILITY TO SUPERVISE

68.    On information and belief, at all relevant times, the myVidster Defendants reserved the right to control access to its system, but failed to police its virtual premises.

69.    On information and belief, at all relevant times, the myVidster Defendants have the right and ability to supervise the users' activities. Defendants have a flag system to monitor for copyright infringement. All flags go to Defendant, Gunter, who has implemented a filter on the flags because of the numerous flags he receives each day.

70.    On information and belief, at all relevant times, the myVidster Defendants have the ability to suspend the backup services.

71.    the myVidster Defendants posted terms of service and other policies on its website.

72.    On information and belief, at all relevant times, the myVidster Defendants have the technology to filter trademark names.

73.    On information and belief, Defendant, Gunter, has the programming ability to create software to prevent the uploading of the same video more than once or to prevent the uploading and copying of a copyrighted video.  On information and belief, the myVidster Defendants can easily purchase the aforesaid software in the marketplace.

74.    On information and belief, the myVidster Defendants have refused to police its website for repeat infringers.

75.    On information and belief, the myVidster Defendants have adopted an unreasonable definition of "repeat infringer".

76.    On information and belief, the myVidster Defendants have refused to make any determination as to whether a video is copyrighted if the video is publicly available.  Defendants have refused to abide by the copyright notice or trademark notice or the FBI warning that appears in copyrighted videos and films.

77.    On information and belief, the myVidster Defendants have refused to investigate repeat infringers who continued posting copyrighted works.  The myVidster Defendants' stated policy that it will not investigate a repeat infringer if the copyrighted work is available publicly is not reasonable, since most of the Internet is publicly available.

78.    On information and belief, the myVidster Defendants  have refused to promptly investigate flags of copyright infringement or to implement software that would remove the infringing material immediately when a user flags the video.  Defendant, Gunter has not written

software or implemented software that would put the flagged video in a queue pending the determination as to whether the video is copyrighted.

79      On information and belief, the availability of copyrighted works on myVidster  is a draw for customers and users of myVidster.

80.      On information and belief, the myVidster Defendants have turned a blind eye to the rampant copyright infringement on its website and to the activities of the repeat infringers, because the illegal activities of the repeat infringers increase traffic to myVidster.com's website.

**THE MYVIDSTER DEFENDANTS COPYRIGHT INFRINGEMENT**

81.      On information and belief, images and copyrighted videos owned by the Plaintiff are uploaded by users and backup copies are made without the permission of Plaintiff.

82.       On information and belief, users of myVidster.com made copies of copyright materials of the Plaintiff using the backup service.  See attached Group Exhibit "14".  Flava will produce unredacted copies of Group Exhibit 14 upon request.

83.      On information and belief , the aforesaid videos reside on myVidster.com's website via the backup service.

84.      On information and belief , the myVidster Defendants indexed the tags on these aforesaid videos making them searchable.

85.      On information and belief,  the myVidster Defendants create thumbnail images of the aforesaid Plaintiff's copyrighted works and the images reside on the myVidster website.

**DMCA NOTICES**

86.     On or about May 12, 2010, Plaintiff became aware of the infringing activities that take place on the website. On or about May 12, 2010, Plaintiff sent via U.S. Mail and email to Defendant, Gunter, and his webhosting company, Server Beach Ltd. (hereinafter "Server Beach"), a takedown notice pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act ("DMCA takedown notice"), in which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently. See attached Exhibit "15" for a copy of the DMCA takedown notice.

87.     On or about July 20, 2010, Plaintiff sent, via U.S. Mail and email to  Defendant, Gunter, and his webhosting company, Server Beach Ltd. (hereinafter "Server Beach"), a second takedown notice pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act ("DMCA takedown notices"), in which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently. See attached Exhibit "15" for a copy of the DMCA takedown notice.

88.     On or about August 21, 2010, Plaintiff sent via U.S. Mail and email to Defendant, Gunter, and his webhosting company, Server Beach Ltd. (hereinafter "Server Beach"), a third  takedown notice pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act ("DMCA takedown notices"), in which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently. See attached Exhibit "15" for a copy of the DMCA takedown notice.

89.     On or about September 22, 2010, Plaintiff sent via U.S. Mail and email to Defendant, Gunter, and his webhosting company, Server Beach Ltd. (hereinafter "Server Beach"), a third  takedown notice pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act ("DMCA takedown notices"), in which notice of the infringing material was

given to the respective entities along with a demand that said material be removed expediently. See attached Exhibit "15" for a copy of the DMCA takedown notice.

90.     On or about December 2, 2010, Plaintiff sent, via U.S. Mail and email to Defendant, Gunter, and his webhosting company, Voxel Dot Net a  takedown notice pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act ("DMCA takedown notices"), in which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently.    See attached Exhibit "15" for a copy of the DMCA takedown notice.

91.     On or about December 5, 2010, Plaintiff sent, via U.S. Mail and email to Defendant, Gunter, and his webhosting company, Voxel Dot Net a  takedown notice pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act ("DMCA takedown notices"), in which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently. See attached Exhibit "15" for a copy of the DMCA takedown notice.

92      On or about December 9, 2010, Plaintiff sent, via U.S. Mail and email to Defendant, Gunter, and his webhosting company, Voxel Dot Net a  takedown notice pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act ("DMCA takedown notices"), in which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently. See attached Exhibit "15" for a copy of the DMCA takedown notice.

93.     On or about January 6, 2011, Plaintiff sent, via U.S. Mail and email to Defendant, Gunter, and his webhosting company, Voxel Dot Net a  takedown notice pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act ("DMCA takedown notices"), in

which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently. See attached Exhibit "15" for a copy of the DMCA takedown notice.

94.     On or about February 7, 2011, Plaintiff sent, via U.S. Mail and email to Defendant, Gunter, and his webhosting company, Voxel Dot Net a  takedown notice pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act ("DMCA takedown notices"), in which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently. See attached Exhibit "15" for a copy of the DMCA takedown notice.

95.     On or about February 10, 2011, Plaintiff sent, via U.S. Mail and email to Defendant, Gunter, and his webhosting company, Voxel Dot Net a  takedown notice pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act ("DMCA takedown notices"), in which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently. See attached Exhibit "15" for a copy of the DMCA takedown notice.

96.     On or about February 16, 2011, Plaintiff sent, via U.S. Mail and email to Defendant, Gunter, and his webhosting company, Voxel Dot Net a  takedown notice pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act ("DMCA takedown notices"), in which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently. See attached Exhibit "15" for a copy of the DMCA takedown notice.

97.     On or about February 25, 2011, Plaintiff sent, via U.S. Mail and email to Defendant, Gunter, and his webhosting company, Voxel Dot Net a  takedown notice pursuant to

17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act ("DMCA takedown notices"), in which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently. See attached Exhibit "15" for a copy of the DMCA takedown notice.

98.     On or about March 15, 2011, Plaintiff sent, via U.S. Mail and email to Defendant, Gunter, and his webhosting company, Voxel Dot Net a  takedown notice pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act ("DMCA takedown notices"), in which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently. See attached Exhibit "15" for a copy of the DMCA takedown notice.

99.     On or about April 22, 2011, Plaintiff sent, via U.S. Mail and email to  Defendant, Gunter, and his webhosting company, Defendant, LeaseWeb a  takedown notice pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act ("DMCA takedown notices"), in which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently. See attached Exhibit "15" for a copy of the DMCA takedown notice.

100.     On or about April 28, 2011, August 19, 2011, August 25, 2011, August 29, 2011, August 31, 2011, September 8, 2011, Plaintiff sent, via U.S. Mail and email to  Defendant, Gunter, and his webhosting company, Defendant, LeaseWeb a  takedown notice pursuant to 17 U.S.C. § 512 *et seq*., the Digital Millennium Copyright Act ("DMCA takedown notices"), in which notice of the infringing material was given to the respective entities along with a demand that said material be removed expediently. See attached Exhibit "15" for a copy of the DMCA takedown notice.

101.     Additional DMCA takedown notices that were sent to Defendants on subsequent dates are also attached as Exhibit "15".

102.     On information and belief, the myVidster Defendants did not did not expeditiously remove the infringing material after being served with a DMCA Notice.

103.     On information and belief, at all relevant times, the myVidster Defendants took little or no action toward stopping, reprimanding, or banning these repeat infringers.

104.     On information and belief, at all relevant times, the myVidster Defendants did not expeditiously remove the infringing material after being served with a DMCA Notice.

105.     On information and belief, Defendant, Gunter, as myVidster's alter ego, remains liable for any and all infringement for which myVidster.com is directly and/or indirectly responsible.

106.     On information and belief, on or before September 27, 2010, Defendant, Gunter, did not initially designate  a DMCA Agent for  myVidster to receive notice for claimed infringement as required by 17 U.S.C. § 512(c)(2),.

107.     On information and belief, the myVidster Defendants facilitate and encourage the aforesaid infringement willfully and with full knowledge and awareness of Plaintiff's ownership of Flava Works' Intellectual Property.

108.      On information and belief, the myVidster Defendants encourage and facilitate the distribution of Flava Works' Intellectual Property to the public at large via myVidster's backup service to increase myVidster's traffic, thereby, increasing,  myVidster's revenue.

109.     On information and belief, as of August 25, 2012, users of myVidster could still purchase the backup service.  Exhibit "16".

110.    For the reasons stated herein, the myVidster Defendants are not eligible for the limitations on liability, or the "safe harbor provisions," provided by 17 U.S.C. § 512 of the DMCA.


## DEFENDANT, LEASEWEB'S, COPYRIGHT INFRINGEMENT

111.    Flava sent Defendant, LeaseWeb DMCA takedown notices when myVidster.com's backup service was running or being offered as a service.  Exhibit "15".

112.    On information and belief, at all relevant times, Defendant, LeaseWeb took little or no action toward stopping, reprimanding, or banning these repeat infringers.

113.    On information and belief, at all relevant times, Defendant, LeaseWeb did not suspend or terminate the hosting services to myVidster.

114.    On information and belief, Defendant, LeaseWeb,'s refusal to suspend hosting services to myVidster allowed myVidster's user base to grow and allowed its users to continue making backup copies of Flava's copyrighted videos.

115.    On information, Defendant, LeaseWeb, did not expeditiously remove the infringing material after being served with a DMCA Notice.

116.    On information and belief, the Unites States' indictment against Megaupload.com and Megaupload Limited describes "LeaseWeb" as follows:

> Leaseweb (Leaseweb.com) is a multinational Internet hosting provider that is headquartered in the Netherlands.  Leaseweb has eight datacenters in the Netherlands, Belgium, Germany, and the United   States, including in the Eastern District of Virginia. More than 630 computer servers in the Netherlands are owned and hosted by Leaseweb for the benefit of the Mega Conspiracy, and an additional sixty servers hosted at Leaseweb were purchased by the Mega Conspiracy in October 2011.  Leaseweb continues to provide the Mega Conspiracy with leased computers, Internet hosting, and support services as of the date of this Indictment.  U.S. v. Megaupload, Limited, et. al., 1:12CR3 (E.D. Virginia 2012).

117.    On information and belief, page 4 of the General Terms and Conditions document on LeaseWeb.com for LeaseWeb USA, Inc. and LeaseWeb, BV defines "LeaseWeb" in very similar terms.

118.    On information and belief, Defendant, LeaseWeb, promotes itself as "one of Europe's largest quality hosting providers" and "announced it will  open its first datacenter in the United States early next year, as part of a major global        expansion program to increase its footprint worldwide. The datacenter, which will be  LeaseWeb's first location outside of Europe, will open in early 2011 in Manassas, Virginia, to meet a fast growing demand for hosting services in North America.

119.    On information and belief, Defendant, LeaseWeb targets the Illinois market when it offers its web hosting services to everyone in the world, including Illinois, and thus, availed itself of the protections afforded under U.S. law.

120.    Defendant, LeaseWeb, should not be allowed to avoid the reaches of the U.S. courts but avail itself of the benefits of the protections afforded it under Illinois and U.S. law. LeaseWeb states that it has a DMCA policy on the LeaseWeb.com website.  Exhibit "17". However, when Flava sent DMCA Notice to abuse@leaseweb.com via theLeaseWeb.com website,   LeaseWeb responded with a generic response advising Flava to follow Dutch Notice and Takedown Code of Conduct.  Exhibit "18". On information and belief, for all practical purposes, LeaseWeb doesn't have a DMCA policy.

113.    For the stated reasons, LeaseWeb is not eligible for the limitations on liability, or the "safe harbor provisions," provided by 17 U.S.C. § 512 of the DMCA.

115. Through all the Defendants' conduct, Plaintiff has suffered and continues to suffer damage to its reputation and good will through the unauthorized use, reproduction and distribution of Flava Works' Intellectual Property.

116. Plaintiff has suffered, is suffering, and will continue to suffer, irreparable damage to its reputation, potential goodwill and monies spent towards development and the goodwill accumulated through its respective copyrights unless Defendants are restrained by this Court.

117. Plaintiff will continue to suffer loss of profits and damage to its good will and reputation unless Defendants are restrained and enjoined by this Court.

118. Plaintiff has no adequate remedy at law.

119. Through Defendants' conduct, Plaintiff has suffered and continues to suffer the loss of the profits it has the right to realize through the use, reproduction and distribution of Flava Works' Intellectual Property. Plaintiff cannot be made whole unless this Court awards Plaintiff damages for Defendants' unauthorized use, reproduction and distribution of Flava Works' Intellectual Property.

## **COUNT I**

**(Direct Copyright Infringement as to Defendants, Gunter, Salsa Indy, LLC, and John Does 1 to 26 – 17 U.S.C. § 501.)**

120. Plaintiff incorporates and re-alleges paragraphs 1-119 of this Sixth Amended Complaint as paragraphs 1-119 of Count I.

121. Defendants' conduct interferes with Plaintiff's exclusive right to reproduce, distribute and display the copyrighted works.

122.     Defendants' conduct constitutes copyright infringement that this Court may remedy under Sections 106 and 501 of the Copyright Act.

123.     Instances of copyright infringement occur whenever one of myVidster.com's user, including John Does 1 to 26, without authorization of the copyright owner, uses myVidster.com backup service to make a copy of a copyrighted content file and/or images. Such acts constitute unauthorized reproduction and distribution and result in unauthorized copies. Defendants participate in, facilitate, materially contribute to and encourage these infringements.

124.     On information and belief, Defendants, John Does 1-26 are myVidster users who caused copies of Plaintiff's copyrighted works to be made using the myVidster.com 's backup service.

125.     On information and belief, Defendants, John Does 1-26 are repeat infringers of myVidster.com users who caused copies of Plaintiff's copyrighted works to be made and posted on the myVidster.com website using the backup service.

126.     On information and belief, the myVidster Defendants create and post thumbnail images of Plaintiff's copyrighted works when users of myVidster.com cause copies of Plaintiff's copyrighted works to be made and posted on the myVidster.com website.

127.     The thumbnail images of Plaintiff's copyrighted works are copies of copyrighted material and infringe on Plaintiff's copyrights.

128.     On information and belief, the myVidster Defendants' backup service makes a backup copy of Flava's videos.

129.     On information and belief, the myVidster Defendants' backup service makes a backup copy of videos.

130.    On information and belief, the backup copies of the videos made from the backup service reside on myVidster's servers.

131.    Defendants' aforesaid activities constitute infringement of Plaintiff's copyrights.

132.    As a result of the injury suffered by Plaintiff's business from Defendants' actions of direct copyright infringement, Plaintiff is entitled to recover actual and/or statutory damages, which shall be determined at trial, and costs of this action, including reasonable attorney's fees, as well as injunctive relief to prevent future infringement.

## COUNT II

### (Contributory Copyright Infringement as to all Defendants.)

133.    Plaintiff incorporates and re-alleges paragraphs 1-132 of Count I of this Sixth Amended Complaint as paragraphs 1-132 of Count II.

134.    On information and belief, Defendants, John Does 1 to 26, posted copyrighted videos of Flava.

135.    On information and belief, the myVidster Defendants' backup service makes copies of videos.

136.    Defendants provided the mechanism through which numerous individuals or entities, including John Does 1-26, without authorization, reproduced and distributed Flava Works' Intellectual Property thereby directly infringing on those copyrighted works.  The myVidster Defendants provided the backup service.

137.    Defendants provided the mechanism through which numerous individuals or entities, including John Does 1-26, without authorization, reproduced and distributed Flava Works' Intellectual Property thereby directly infringing on those copyrighted works Defendant LeaseWeb provided hosting services.

138.    On information and belief, Defendants had actual or constructive knowledge of or was willfully ignorant of the infringing activity and had the obligation and ability to control and stop the infringing activity, yet failed to do so.  Flava sent Defendants DMCA notices.

139.    On information and belief, the myVidster Defendants have refused to adopt a reasonable definition of "repeat infringer" or to implement a reasonable repeat infringer policy.

140.    On information and belief, the myVidster Defendants have permitted, encouraged, and allowed repeat infringers to continue to post copyrighted videos to draw more traffic to its website.

141.    On information and belief, the LeaseWeb Defendants have refused to suspend or terminate hosting service to myVidster.

142.    On information and belief, the Defendants aided, abetted, allowed, encouraged and otherwise materially contributed to helping those individuals to reproduce and distribute Flava Works' Intellectual Property through his website without regard to copyright ownership.

143.    Defendants' conduct constitutes vicarious copyright infringement that this Court may remedy under Sections 106 and 501 of the Copyright Act.

144    As a result of the injury suffered by Plaintiff's business from Defendants' actions of vicarious copyright infringement, Plaintiff is entitled to recover actual and/or statutory damages, which shall be determined at trial, and costs of this action, including reasonable attorney's fees, as well as injunctive relief to prevent future infringement.

## COUNT III

**(Vicarious Copyright Infringement- Defendants, Gunter and Salsa Indy, LLC.)**

145.    Plaintiff incorporates and re-alleges paragraphs 1-144 of Count II of this Sixth Amended Complaint as paragraphs 1-144 of Count III.

146.    On information and belief, the myVidster Defendants received direct financial benefits from the infringements by increasing its website traffic and generating revenue from storage fees.

147.    On information and belief, Defendant, LeaseWeb, received direct financial benefits from the infringements by receiving fees for hosting services provided to myVidster.

148.  On information and belief, the availability of infringing material on myVidster acts as a draw to the site and enhances the site's attractiveness or draws customers.

149.    On information and belief, the myVidster Defendants have reserved the right or has the right to control access to the myVidster system, but has failed to police its virtual premise.

150    On information and belief, the myVidster Defendants have the right and ability to supervise myVidster users pursuant to the terms of service and policies.

151.    On information and belief, the myVidster Defendants have a filtering and flagging system that can be used to filter or flag infringing materials but Defendant has refused to use this system with respect to infringing materials.

152.     On information and belief, the myVidster Defendants can monitor its users through the flagging feature on its system.  However, Defendants have failed to promptly respond to flagging for copyright infringement.

153.     On information and belief, the myVidster Defendants have implemented a filter for the numerous flags that myVidster.com receives on a daily basis.

154.     On information and belief, the myVidster Defendants have refused to adopt a reasonable definition of "repeat infringer" or to implement a reasonable repeat infringer policy.

155.     On information and belief, the myVidster Defendants have permitted, encouraged, and allowed repeat infringers to continue to post copyrighted videos to draw more traffic to its website.

156.     Defendants' conduct constitutes vicarious copyright infringement that this Court may remedy under Sections 106 and 501 of the Copyright Act.

157.     As a result of the injury suffered by Plaintiff's business from Defendants' actions of vicarious copyright infringement, Plaintiff is entitled to recover actual and/or statutory damages, which shall be determined at trial, and costs of this action, including reasonable attorney's fees, as well as injunctive relief to prevent future infringement.

## Count IV

### (Inducement of Copyright Infringement- Defendants, Gunter and LLC, Salsa Indy, LLC.)

158.     Plaintiff incorporates and re-alleges paragraphs 1-157 of Count III of this Sixth Amended Complaint as paragraphs 1-157 of Count IV.

159.     On information and belief, the myVidster Defendants provide the mechanism through which numerous individuals or entities, including John Does 1-26, without

authorization, reproduced and distributed Flava Works' Intellectual Property thereby directly infringing on those copyrighted works, via the backup service.

160.    On information and belief, by offering online storage space for those who desire to backup their bookmark videos and encouraging users to share their videos, the myVidster Defendants intentionally induced users to infringe Flava Works' Intellectual Property.

161.    On information and belief, by creating a plug-in for Fire Fox to bypass privately protected videos and make backup copies, the myVidster Defendants intentionally induced users to infringe Flava Works' Intellectual Property.

162.    On information and belief, by stating that the purposes of the backup service and explaining to users that the plug-in for Fire Fox can be used to bypass privately protected videos and make backup copies, the myVidster Defendants intentionally induced users to infringe Flava Works' Intellectual Property.

163.    On information and belief, by encouraging users to share copyrighted videos with friends and family, the myVidster Defendants intentionally induced users to infringe Flava Works' Intellectual Property.

164.    On information and belief, the myVidster Defendants had actual or constructive knowledge of or was willfully ignorant of the infringing activity and had the obligation and ability to control and stop the infringing activity, yet failed to do so.

165.    On information and belief, Defendant, Gunter, posted entries on myVidster's blog to induce users to buy the backup service and backup copyrighted videos.

166.    On information and belief, Defendant, Gunter, wrote the four reasons to use myVidster.com are: 1. Video backup bypasses YouTube videos that are private or have disable embedded; 2. Video backup bypasses video host through blog's hotlinking; 3.   Video backup

works for a variety of video hosts other than YouTube; 4. Never fearing that your online videos will get removed by the video host.

167.    On information and belief, Defendant, Gunter gave instructions on users on how to add a plug-in for the Firefox browser that would allow users to surf the internet and copy and post copyrighted videos that are private or have been disabled from being copied.  Exhibit "19".

168.    On information and belief, Defendants' conduct constitutes inducement copyright infringement that this Court may remedy under Sections 106 and 501 of the Copyright Act.

169.    As a result of the injury suffered by Plaintiff's business from Defendants' actions of inducement of copyright infringement, Plaintiff is entitled to recover actual and/or statutory damages, which shall be determined at trial, and costs of this action, including reasonable attorney's fees, as well as injunctive relief to prevent future infringement.

**WHEREFORE** Plaintiff, Flava Works, Inc. respectfully requests that this Honorable Court enter the following:

1.    A judgment in its favor  of Plaintiff, Flava Works, Inc. and against the Defendants, Marques Rondale Gunter , SalsaIndy, LLC, John Does 1 through 26,  LeaseWeb USA, Inc., and LeaseWeb B.V.

2.    For a temporary restraining order, preliminary injunction, and permanent injunction against Defendants and their  aliases, his agents, servants, representatives, employees, attorneys, parents, subsidiaries, related companies, partners, successors, predecessors, assigns, and all persons acting for, with, by, through, or under Defendants and each of them during the pendency of this action as preliminary injunction and permanently thereafter from:

a.    Restraining and enjoining Defendants from posting on any website(s) material that infringes Flava Works' Intellectual Property, as well as from facilitating the posting on any website(s) by third parties infringing material and/or links which enable the easy access to Flava Works' Intellectual Property that is located on third party websites;

b.    Restraining and enjoining Defendants from otherwise distributing, reproducing, using, copying, streaming, making available for download, or otherwise exploiting Flava Works' Intellectual Property, including Plaintiff's copyrighted works, trademarks, trade dress, or any other product or symbol with the indicia of Plaintiff's ownership, through use of their website(s) or otherwise;

c.    Restraining and enjoining Defendants from doing any other act, through his website(s) or otherwise, which shall confuse, deceive, cause mistake, etc. among the relevant trade and general public as to the association, sponsorship and/or approval between Plaintiff and any website(s);

d.    Restraining and enjoining Defendants from otherwise Using, copying or otherwise exploiting Plaintiff's copyrights and copyrighted works;

e.    Restraining and enjoining Defendants from otherwise using, disclosing. converting, appropriating. retaining. selling, transferring or copying any property of Plaintiffs;

f.    Restraining and enjoining Defendants from otherwise Using any of the Plaintiff's marks attached hereto or any colorable imitation of any of the marks in connection with the distribution of images and content at Defendants' website;

g.     Restraining and enjoining Defendants from otherwise doing any other act or thing likely to, or calculated to, induce the belief that Defendants or Defendants' business is in any way affiliated, connected  associated with Plaintiff, or Plaintiff's business;

h.     Restraining and enjoining Defendants from otherwise unfairly competing with plaintiffs in any manner.

3.     Requiring Defendants  to submit to the Court and to serve upon Plaintiff a report, written under oath, setting forth in detail the manner and form in which Defendant has complied with the terms of this injunction;

4.     Requiring Defendants to cease operation of the website domain myVidster.com and to  transfer ownership of myVidster.com immediately to Plaintiff;

5.     Disgorging Defendants of any profits they may have made as a result of his infringement of Flava Works' Intellectual Property;

6.     Awarding Plaintiff the actual damages sustained by Plaintiff as a result of Defendants' infringement of Flava Works' Intellectual Property, the amount of which is to be determined at trial;

7.     Awarding Plaintiff compensatory and punitive damages, as deemed just and proper by this Court, as a result of the willful misconduct on the part of the Defendants;

8.     Awarding Plaintiff the costs of this action, together with reasonable attorney's fees;

9.     Awarding Plaintiff enhanced statutory damages, pursuant to 15 U.S.C. § 504(c)(2) of the Copyright Act, for Defendants' willful infringement of Plaintiff's copyrighted works;

10.     Requiring within ten (10) days after the entry of an order for either preliminary or permanent injunction, Defendants be required to turn over any files bearing any of Plaintiff's trademarks;

11.     Requiring Defendants to deliver up for destruction all DVDs, DVD covers, labels, letterhead, business cards, signs, prints, packages, wrappers, receptacles, advertisements and the like in their possession bearing the name or mark of any of the Plaintiff's trademarks or any other reproduction, counterfeit, copy or colorable imitation of the Plaintiff's trademarks.

12.     Awarding punitive damages.

13.     Ordering that the domain name myVidster.com be transferred to Plaintiff.

14.     Awarding any such other and further relief as this Court deems just, reasonable and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues properly triable by jury in this action, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED: November 28, 2012                    Respectfully Submitted,

                                            By: /s/ Meanith Huon /s/
                                            Meanith Huon

Meanith Huon
ARDC No.: 6230996
PO Box 441
Chicago, IL 60690
312-405-2789

Flava Works, Inc.
933 W. Irving Pk. Rd., Ste. C
Chicago, IL 60613

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Flava Works, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10-cv-06517 |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Marques Rondale Gunter | ) | |
| d/b/a | ) | |
| myVidster.com, myVidster.com, | ) | |
| Salsaindy, LLC, et. al. | ) | |
| | ) | |
| Defendants. | ) | |

## PROOF OF SERVICE

Under penalties of law, I certify that on November 28, 2012, I served the following documents or items:

       1.    Plaintiff's Sixth Amended Complaint.

by electronically serving all counsel of record.

Respectfully submitted,
/s/ Meanith Huon
Meanith Huon
PO Box 441
Chicago, Illinois 60690
Phone: (312) 405-2789
E-mail: huon.meanith@gmail.com
IL ARDC. No.: 6230996