10-6517.121-JCD                                    December 13, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FLAVA WORKS, INC.,                )
                                  )
          Plaintiff,              )
                                  )
          v.                      )    No. 10 C 6517
                                  )
MARQUES RONDALE GUNTER d/b/a      )
myVidster.com; SALSAINDY, LLC     )
d/b/a myVidster.com;              )
JOHN DOES 1-26; LEASEWEB USA,     )
INC. d/b/a LeaseWeb.com; and      )
LEASEWEB B.V. d/b/a LeaseWeb.com, )
                                  )
          Defendants.             )

## MEMORANDUM OPINION

Before the court is the motion of defendant LeaseWeb USA, Inc. pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6) to dismiss the claims asserted against it. For the reasons explained below, the motion is granted.

## BACKGROUND

Flava Works, Inc. is a company that produces and distributes adult entertainment products, including DVDs and streaming video. Flava asserts copyright infringement claims against defendants Marques Rondale Gunter, who owns and operates a website called myVidster.com ("myVidster"); SalsaIndy, LLC ("SalsaIndy"), an entity controlled by Gunter; John Doe defendants who allegedly used myVidster's backup service to make copies of Flava's videos;

- 2 -

LeaseWeb B.V. ("Leaseweb B.V."), which allegedly operated the server that hosted myVidster; and LeaseWeb USA, Inc. ("Leaseweb USA"), an affiliate of LeaseWeb B.V. We will refer to the latter two defendants collectively, where appropriate, as the "Leaseweb defendants."

A bit of the pleading history regarding the Leaseweb defendants is in order. They were first named as defendants in this action in the Fourth Amended Complaint, which was filed on October 26, 2011. Summons was issued to Leaseweb USA in February 2012. It moved to dismiss the Fourth Amended Complaint, but that motion was mooted by the filing of a Fifth Amended Complaint, which Leaseweb USA also moved to dismiss. Then, at a hearing on November 7, 2012, plaintiff sought leave to file a Sixth Amended Complaint. We granted leave to do so. We also indicated that unless the allegations of the Sixth Amended Complaint are materially different from those of the Fifth Amended Complaint as to Leaseweb USA, that defendant need not plead to the new complaint. The Sixth Amended Complaint does add some allegations regarding the Leaseweb defendants, but it does not transform the landscape to the extent that a new motion to dismiss is required. We will construe the motion to dismiss as being directed to the Sixth Amended Complaint.

- 3 -

**DISCUSSION**

Leaseweb USA's motion is based on two grounds: lack of personal jurisdiction and failure to state a claim upon which relief could be granted.

**A.   Does This Court Have Personal Jurisdiction over Leaseweb USA?**

"The plaintiff has the burden of establishing personal jurisdiction, and where . . . the issue is raised by a motion to dismiss and decided on the basis of written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." Tamburo v. Dworkin, 601 F.3d 693, 700 (7th Cir. 2010). In a federal-question case, "a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A., 623 F.3d 440, 443 (7th Cir. 2010). The Copyright Act does not authorize nationwide service of process, Janmark, Inc. v. Reidy, 132 F.3d 1200, 1201 (7th Cir. 1997), so Leaseweb USA is "amenable to service (and hence subject to personal jurisdiction) only if it could be served in Illinois under Illinois law," see Mobile Anesthesiologists, 623 F.3d at 443; see also Fed. R. Civ. P. 4(k)(1)(A). Illinois's long-arm statute authorizes personal jurisdiction to the extent permitted by the Illinois Constitution and the United States Constitution. See 735 ILCS 5/2-209(c).

- 4 -

"[T]here is no operative difference between these two constitutional limits," so a single constitutional inquiry will suffice. Mobile Anesthesiologists, 623 F.3d at 443; see also International Shoe Co. v. Washington, 326 U.S. 310 (1945).

Plaintiff's argument is somewhat difficult to follow, but it appears that plaintiff is arguing that Leaseweb USA is subject to both general and specific jurisdiction in Illinois.

## 1. **General Personal Jurisdiction**

"A defendant with 'continuous and systematic' contacts with a state is subject to general jurisdiction there in any action, even if the action is unrelated to those contacts." Tamburo, 601 F.3d at 701 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984)). To be subject to general jurisdiction, Leaseweb USA's contacts with Illinois must be "so 'continuous and systematic' as to render [the defendants] *essentially at home* in the forum." Abelesz v. OTP Bank, 692 F.3d 638, 654 (7th Cir. 2012) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, --- U.S. ----, 131 S. Ct. 2846, 2851 (2011)). This standard "is demanding because the consequences can be severe: if a defendant is subject to general jurisdiction in a state, then it may be called into court there to answer for any alleged wrong, committed in any place, no matter how unrelated to the defendant's contacts with the forum." uBID, Inc. v. GoDaddy Group, Inc., 623 F.3d 421, 426 (7th Cir. 2010).

- 5 -

Leaseweb USA has submitted the affidavit of Dewey Coerper III, Senior Account Manager. He states that Leaseweb USA is a legally separate entity from Leaseweb B.V. (the Dutch entity that is alleged to have hosted myVidster) that maintains its own separate networks, servers, records, and offices and does not have access to, custody of, or control over any elements of Leaseweb B.V.'s network. (Def.'s Mem. in Supp. of Mot., Ex. A, Aff. of Dewey Coerper III ¶¶ 4-5.) Coerper also states that Leaseweb USA is a Delaware corporation that maintains its sole office in Manassas, Virginia. It does not have an office in Illinois, nor do any of its employees. (Coerper Aff. ¶¶ 3, 6.) It does not specifically target Illinois consumers in its advertising, and it has only one customer in Illinois. (Coerper Aff. ¶¶ 7-8.)

In response, plaintiff points to Leaseweb USA's maintenance of an interactive and commercial website through which prospective or existing customers can order Internet hosting services, as well as a press release issued at some point by Leaseweb B.V. that indicated that it would be opening its "first datacenter in the United States." (Pl.'s Resp. at 2, 9; Sixth Am. Compl. ¶ 16.) Plaintiff contends that Leaseweb USA "stood ready and willing to do business with Illinois residents" and knowingly did do business with one Illinois resident. Plaintiff also asserts that "Leaseweb offered peering services via a data center in Chicago, Illinois." (Pl.'s Resp. at 9.) Attached to plaintiff's response is a copy of

- 6 -

a webpage from Leaseweb.com that states: "LeaseWeb has an open peering policy" and "will generally peer with anyone who wants to and is connected to any or all of the internet exchanges below," and lists an exchange in Chicago. (Pl.'s Resp., Ex. A.) Plaintiff fails to define "peering" or discuss how it should factor into our analysis of personal jurisdiction. Leaseweb, however, helpfully explains that "peering" occurs when "traffic from Leaseweb USA's network . . . travel[s] over the network of another company that is based in Illinois." (Def.'s Reply at 8-9.)

Both plaintiff's latest complaint and its response brief suffer from serious imprecision and vagueness. In many instances, primarily where it is convenient to plaintiff, plaintiff's counsel has simply referred to "Leaseweb" or "Leaseweb.com," and/or lumped the two Leaseweb defendants together.[1] This sloppiness does not suffice; plaintiff cannot ignore the fact that although affiliated, Leaseweb B.V. and Leaseweb USA are two separate entities. They share the Leaseweb.com website, but plaintiff's own evidence demonstrates that the website provides notice that Leaseweb B.V. and Leaseweb USA are discrete entities with separate contact information and separate legal agreements for services, depending on which company's servers a customer chooses to perform the web-

---

[1] For example, paragraph 12 of the complaint states: "Defendants, LeaseWeb USA, Inc. and LeaseWeb B.V. will be referred to collectively as 'LeaseWeb'." On page 10 of plaintiff's response, plaintiff states: "Leaseweb set up an expansive, sophisticated commercial venture online on an international level."

hosting services.  We will disregard the instances where plaintiff has failed to specify, and we are unable to infer, to which Leaseweb entity plaintiff is referring.

Plaintiff may be attempting--largely through innuendo--to assert an alter-ego theory regarding the Leaseweb defendants, which is rejected.  There are no alter-ego allegations in the complaint, and plaintiff has failed to provide any evidence to support such a finding, such as the failure to comply with corporate formalities, undercapitalization, or the commingling of funds or assets.  See, e.g., Main Bank of Chicago v. Baker, 427 N.E.2d 94, 101-02 (Ill. 1981); cf. Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 943 (7th Cir. 2000) ("[C]onstitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary.").  Plaintiff makes much of the shared website and the fact that Leaseweb *B.V.* at one point stated its intent to open a "data center" in the United States, but we are concerned with the activities of Leaseweb *USA*; plaintiff does not submit any evidence that the two companies have the unity of interest or ownership that would be required for alter-ego liability.  Cf. Drake v. Ocwen Fin. Corp., No. 09 C 6114, 2010 WL 1910337, at *4-5 (N.D. Ill. May 6, 2010) (finding that defendants' shared website

- 8 -

features and other similarities were insufficient for imposition of alter-ego liability).

The cases cited by plaintiff as support for finding jurisdiction are distinguishable because they involved defendants with significant contacts with the state in addition to the operation of an interactive website. In contrast, Leaseweb USA's contacts with Illinois are nearly nonexistent; it is physically and legally absent from the state and has just one customer here. The operation of its website does not add much to the general-jurisdiction analysis. Our Court of Appeals has warned that "[c]ourts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'" Be2LLC v. Ivanov, 642 F.3d 555, 558 (7th Cir. 2011). There is no evidence indicating how much revenue is generated from Leaseweb USA's single Illinois customer nor any evidence that Leaseweb USA specifically targets Illinois customers. The fact that Leaseweb USA's network may interconnect with an Illinois-based network to exchange traffic is a very attenuated contact with the state that also fails to add much to the analysis.

Leaseweb USA's contacts with Illinois fall far short of being "continuous and systematic" and are therefore insufficient to support general jurisdiction. See Abelesz, 692 F.3d at 654.

- 9 -

## 2. **Specific Personal Jurisdiction**

"Specific personal jurisdiction is appropriate where (1) the
defendant has purposefully directed his activities at the forum
state or purposefully availed himself of the privilege of
conducting business in that state, and (2) the alleged injury
arises out of the defendant's forum-related activities." Tamburo,
601 F.3d at 702. Plaintiff contends in a cursory fashion that
Leaseweb USA is subject to personal jurisdiction in Illinois
because Leaseweb USA "offered web hosting services to Illinois
residents and to everyone in the United States" and "[p]laintiff's
claim arises out of Defendant's contact with Illinois customers or
prospective customers in providing web hosting services."[2] (Pl.'s
Resp. at 9.) This argument does not pass the straight-face test as
to the second prong of the specific-jurisdiction analysis. There
is no indication that Leaseweb USA's contract with its single
Illinois customer is in any way related to plaintiff's copyright
claims. Plaintiff alleges injury due to copyright infringement
that arises out of Leaseweb B.V.'s, not Leaseweb USA's, alleged
hosting of myVidster. (Sixth Am. Compl. ¶ 11.)[3] (And in any
event, the myVidster defendants are not located in Illinois.)

---

[2] Plaintiff does not present any "express aiming" argument or discuss the
place of its alleged injury.

[3] As we discuss below, the complaint actually fails to allege any conduct
on the part of Leaseweb USA sufficient to state a copyright infringement claim
against it.

- 10 -

Plaintiff has failed to show that Leaseweb USA is subject to either general or specific jurisdiction in Illinois. Leaseweb USA will therefore be dismissed from this action. If lack of personal jurisdiction were the only basis for this dismissal, it would be without prejudice to refiling in another jurisdiction; however, as discussed below, plaintiff also fails to state a claim against Leaseweb USA after having had three opportunities to do so.

**B.**  **Does Plaintiff State a Claim Against Leaseweb USA?**

Under federal notice-pleading standards, a complaint need not contain "detailed factual allegations," but it must have more than mere "labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must contain sufficient facts to raise a plaintiff's right to relief above a "speculative" level, id. at 555, and the claim must be "plausible on its face," id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Leaseweb USA's first Rule 12(b)(6) argument is that plaintiff's copyright claims are barred by safe-harbor protections of the Digital Millennium Copyright Act (the "DMCA"). We need not discuss the DMCA because the problem with the Sixth Amended Complaint is more fundamental: the complaint fails to allege any conduct on the part of Leaseweb USA that allows us to draw an

- 11 -

inference that it is liable for any species of copyright infringement.[4]  It is Leaseweb B.V. that is alleged to host or have hosted myVidster, which allegedly contained infringing material "when the backup service was running." (Sixth Am. Compl. ¶ 11.) Leaseweb USA is merely alleged to be the "U.S. Data Center and affiliate of LeaseWeb B.V." (Sixth Am. Compl. ¶ 12.)  As discussed above, this allegation, as well as the complaint's frequent references to the non-existent "defendant Leaseweb," are insufficient to impute the purported conduct of Leaseweb B.V. to Leaseweb USA.

Plaintiff has been given the opportunity to amend its complaint twice since it has known of Leaseweb USA's position that Leaseweb USA is the incorrect defendant and that the complaint fails to state a claim against Leaseweb USA.  It has failed to state a claim against the entity despite having had three chances. Therefore, the claims against Leaseweb USA will be dismissed with prejudice.  See, e.g., Stanard v. Nygren, 658 F.3d 792, 801 (7th Cir. 2011) ("Leave to replead need not be allowed in cases of repeated failure to cure deficiencies by amendments previously allowed.") (internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, the motion of defendant LeaseWeb USA, Inc. to dismiss the claims against it [153] is granted, and

---

[4]/  This is Leaseweb USA's second argument.

- 12 -

the claims against LeaseWeb USA, Inc. are dismissed with prejudice.


DATE:          December 13, 2012


ENTER:         _____
               John F. Grady, United States District Judge